**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

**SHARON K. RIDDICK**
*on behalf of herself and all others*
*similarly situated*,

       **Plaintiff,**

v.                                              **Civil Action No. _____**

**CHEX SYSTEMS, INC.,**

**SERVE:**    CT Corporation System, Reg. Agent
                  4701 Cox Rd., Ste. 285
                  Glen Allen, VA 23060-6808

       **Defendant.**

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, SHARON K. RIDDICK ("Plaintiff"), *on behalf of herself and all individuals similarly situated*, by Counsel, and for her Complaint against CHEX SYSTEMS, INC. ("ChexSystems" or "Defendant"), she alleges as follows:

## PRELIMINARY STATEMENT

1. Section 1681e(b) is one of the cornerstone provisions of the Fair Credit Reporting Act ("FCRA"), requiring consumer reporting agencies ("CRAs") like Defendant to maintain reasonable procedures to assure maximum possible accuracy in their credit reporting. 15 U.S.C. § 1681e(b).

2. ChexSystems is a "nationwide specialty consumer reporting agency under the Fair Credit Reporting Act" whose "services primarily assist clients in assessing the risk of opening

new accounts". About ChexSystems, https://www.chexsystems.com/about-chexsystems (last visited Nov. 1, 2024).

3. Although ChexSystems is not as well known as the "Big 3" consumer reporting agencies—Equifax, Experian, and Trans Union—the harm that a consumer can experience from inaccurate ChexSystems reporting is both significant and far-reaching.

4. For example, a derogatory mark on a ChexSystems report can preclude an individual from participating in the traditional banking system and obtaining an FDIC-insured checking or savings account.

5. This scenario is exactly what happened to Plaintiff, after ChexSystems inaccurately reported an overdrawn account with SunTrust as though it were an ongoing obligation instead of a debt that had been discharged in bankruptcy.

6. This consumer class action challenges the uniform policies and procedures of Defendant ChexSystems regarding debts discharged through bankruptcy cases that are converted from Chapter 13 to Chapter 7.

7. When faced with bankruptcy, most consumer debtors have the option of proceeding under Chapter 13. *See, generally,* 11 U.S.C. § 109(g). One of the greatest benefits of Chapter 13 is its flexibility. Under 11 U.S.C. § 1307, a debtor may convert a Chapter 13 case to a Chapter 7 case "at any time," and the right to convert a Chapter 13 to a Chapter 7 is non-waivable.

8. Converting a case from Chapter 13 to Chapter 7 "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a). Therefore, "in a case converted from Chapter 13, a debtor's post-petition earnings and acquisitions do not become part of the new Chapter 7 estate." *Sherman v. Wal–*

*Mart Assocs., Inc.*, 550 B.R. 105, 109 (N.D. Tex. 2016) (citing *Harris v. Viegelahn*, 135 S. Ct. 1829, 1837, 191 L. Ed. 2d 783 (2015)).

9. Although the bankruptcy petition date in a converted case remains unchanged, debts that the consumer incurs after the bankruptcy filing (but prior to the conversion) are included in the bankruptcy discharge, as though they were incurred pre-petition. *See* 11 U.S.C. § 348(d). Simply put, converting a Chapter 13 to a Chapter 7 allows the debtor to discharge debts that were incurred during the Chapter 13.

10. And, of course, debts that are incurred pre-petition would still be discharged in a converted case, the same as they would have been if the debtor had originally filed a Chapter 7.

11. Defendant has failed to implement any policies or procedures for ensuring that it properly reports debts that are discharged in cases converted from Chapter 13 to Chapter 7, and Defendant wrongfully and systematically reports these discharged debts as due and owing and/or past due. Defendant's practices deprive consumers of their important statutory right under 15 U.S.C. § 1681e(b) to have *only* maximally accurate information reported on their credit.

## **JURISDICTION**

12. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

13. Venue is proper in this District and Division because a substantial part of the events and omissions giving rise to the claim occurred in this District and Division. Plaintiff resides here, and she filed her bankruptcy here. The entire Virginia sub-class resides in the Commonwealth of Virginia.

## **PARTIES**

14. Plaintiff Sharon K. Riddick is a natural person, a resident of the Norfolk Division, and a "consumer" as defined by 15 U.S.C. §1681a(c).

15. Defendant CHEX SYSTEMS, INC. ("Chex Systems") is a limited liability company authorized to do business in the Commonwealth of Virginia through its registered offices in Glen Allen, VA. Chex Systems is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Chex Systems is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d).

## FACTS

*Plaintiff's Experiences*

16. On or around March 8, 2024, Plaintiff applied for a bank account with Chartway Federal Credit Union and was denied.

17. An employee of Chartway Federal Credit Union informed Plaintiff that the denial was due to an overdrafted account with SunTrust Bank.

18. On or around March 25, 2024, Plaintiff obtained a copy of her credit file with ChexSystems, which showed an inquiry from Chartway Federal Credit Union on 03/08/2024.

19. While reviewing her credit file, Plaintiff discovered that ChexSystems was reporting a closed SunTrust Bank account inaccurately.

20. Specifically, ChexSystems was reporting an "Original Charge Off Amount" of $458.66, a "Closure Status" of "UNPAID", and a "Closure Status Date" of 07/12/2019.

21. This information was inaccurate. Plaintiff obtained a bankruptcy discharge in September of 2019 from the United States Bankruptcy Court for the Eastern District of Virginia and the SunTrust account was included in her discharge.

22. Plaintiff's original bankruptcy filing was under Chapter 13, and she incurred the SunTrust debt after filing her Chapter 13 petition. She later converted the Chapter 13 proceeding to a Chapter 7 in June of 2017.

23. The fact of the conversion, as well as the date it occurred, is available on the bankruptcy docket that can be accessed on www.pacer.gov.

24. It is black-letter bankruptcy law that the conversion caused the SunTrust debt to be treated as though it was incurred before the filing of the Chapter 7 petition, meaning any bankruptcy discharge would include those debts.

25. As a result of Plaintiff converting her bankruptcy to a Chapter 7, the debt that she owed to SunTrust was included in her discharge. Defendant's reporting of the debt as due and owing or past due after Plaintiff received her discharge was therefore inaccurate.

26. The information showing that this debt was discharged was easily, cost-effective, and publicly available to Defendant before it furnished the subject credit report regarding Plaintiff.

27. Defendant could have caught the inaccuracies if it implemented and followed even simple automated processes within its reporting procedures.

28. If Defendant had reasonable procedures (or any procedures whatsoever) to assure maximum possible accuracy of this information, it would have easily determined that the account was discharged in Plaintiff's Bankruptcy. Because Defendant could learn this information easily by reviewing the bankruptcy records, concluding that the debt was discharged would not require Defendant to make any inquiry to Plaintiff personally, or even require Defendant to obtain information from a credit furnisher.

29. Defendant knowingly choose to ignore these obvious red flags in violation of § 1681e(b).

30. As a result of Defendant's conduct, Plaintiff and the putative class members suffered particularized and concrete injuries, including damages to their reputations, reductions to their credit scores, increased risks that they would be denied access to credit, and increased risks that they would be denied access to checking and savings accounts. *In re Helmes*, 336 B.R. 105 (Bankr. E.D. Va. 2005) (explaining "a credit report entry that reflects a past due account is treated differently by prospective creditors in evaluating credit applications than an entry that reflects a debt that has been discharged in bankruptcy. The essential difference is that a discharged debt represents a historical fact, that the prospective borrower filed bankruptcy in the past and was relieved from the obligation. Nothing is now due. A past due debt represents a delinquent but legally enforceable obligation that must be resolved.").

***Defendant's Business Model and Notice Regarding Bankruptcy Inaccuracies***

31. If Defendant had reasonable procedures (or, perhaps any procedure) to assure maximum possible accuracy, it would have easily determined that this account was discharged in bankruptcy.

32. However, upon information and belief, despite the abundance of notice available to Defendant regarding the frequent errors in bankruptcy related credit information, Defendant does not independently review the information that it receives from furnisher customers.

33. Instead, Defendant merely parrots the information about accounts included in bankruptcy that it receives from furnishers, without taking any additional steps to ensure that the accounts are updated after a consumer receives a discharge.

34. Upon information and belief, Defendant has actual knowledge of the problems associated with its systematic, erroneous reporting of discharged debts as due and owing, yet it deliberately chooses to ignore these problems because reviewing and/or cross-checking the data would reduce its bottom line.

35. At all times relevant to this Complaint, Defendant's conduct was willful and carried out in reckless disregard for consumers' rights under the FCRA. By example only and without limitation, Defendant's conduct was willful because it ran a risk of harm that was known or so obvious it should have been known by failing to implement any procedure to identify and correct these common errors prior to furnishing reports.

36. Despite being a business whose very core is data and reporting it accurately, Defendant (much like many other CRAs) takes the well-worn position that "bankruptcy is hard," and fraught with such a multitude of potential pitfalls that it should not be required to interpret the plain meaning of things on a bankruptcy docket.

37. Prior litigation and government oversight has highlighted these systematic issues. Defendant failed to adopt any procedures despite the fact that CRAs have long been subject to court decisions critical of similar conduct. *See White v. Experian Info. Solutions, Inc*., et al. Case No. 8:05-cv-01070 (C.D. Cal. Aug. 19. 2008)*; Solomon v. Equifax Information Services, LLC*, No. 3:19-cv-255-JAG (E.D. Va. Filed April 10, 2019); *Acosta v. Trans Union*, 243 F.R.D. 377, n.3 (C.D. Cal. 2007) (citing a bankruptcy lawyer's survey of approximately 900 clients found that 64% of Trans Union reports and 66% of Equifax reports erroneously list one or more discharged debts as due and owing); *see also* Federal Trade Comm., 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT, at 67 (July 2011) ("However, when a CRA learns or should reasonably be aware of errors in its reports that may

indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.").[1]

## COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)
## Class Claim

38. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length in this paragraph.

39. **The 1681e(b) Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class initially defined as follows:

> All natural persons who (1) were the subject of a consumer report furnished by Defendant to a third party within five years before the filing of this action; (2) where the report indicated an outstanding balance or a past due indication on an account on the report that was open when the bankruptcy was filed or opened after the bankruptcy was filed and before the bankruptcy was converted from a Chapter 13 to a Chapter 7; and (3) the report was published to a third party.

> Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

40. **The Virginia 1681e(b) Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class initially defined as follows:

> All natural persons with a primary address located in Virginia, within Defendant's file who (1) were the subject of a consumer report furnished by Defendant to a third party within five years before the filing of this action; (2) where the report indicated an outstanding balance or a past due indication on an account on the report that was open when the bankruptcy was filed or opened after the bankruptcy was filed and before the bankruptcy was converted from a Chapter 13 to a Chapter 7; and (3) the report was published to a third party.

---

[1] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

> Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

41. **Numerosity**. Upon information and belief, Plaintiff alleges that the 1681e(b) class and subclass are so numerous that joinder of the claims of all class members is impractical. The names and addresses of the class members are identifiable through documents maintained by Defendant and the class members may be notified of the pendency of this action by publication or mailed notice.

42. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant had reasonable procedures to assure that it did not wrongfully list one or more discharged debts as due and owing and/or past due; (b) whether this conduct constituted a violation of the FCRA; and (c) whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of the Plaintiff and putative class members.

43. **Typicality**. Plaintiff's claims are typical of the claims of each putative class member and all are based on the same facts and legal theories. Plaintiff, as every putative class member, alleges a violation of the same FCRA provision, 15 U.S.C. § 1681e(b). This claim challenges the credit reporting procedures of Defendant and does not depend on any individualized facts. For purposes of class certification, Plaintiff seeks only statutory and punitive damages. The recovery of class statutory and punitive damages is ideal and appropriate in circumstances like this one, where injuries are particularized and concrete, but difficult to

quantify. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the class.

44. **Adequacy**. Plaintiff will fairly and adequately protect the interests of the class and subclass. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and have accepted those responsibilities.

45. Certification of the class and subclass under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

   a. As alleged above, the questions of law or fact common to the members of the class and subclass predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues. Given the complex and extensive litigation necessitated by Defendant's conduct, using individual prosecution to obtain the statutory and punitive damages sought by each member would prove burdensome and expensive. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

   b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford to bring their claims individually. Further, most consumers affected by Defendant's conduct described above are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case

would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

46. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff and the putative class members, by wrongfully listing one or more discharged debts as due and owing and/or past due where it was apparent that the consumer had received a bankruptcy discharge in a bankruptcy case that was converted from a Chapter 13 to a Chapter 7.

47. Defendant's violations of 15 U.S.C. § 1681e(b) were willful, rendering Defendant liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

48. Plaintiff and the putative class members are entitled to recover statutory damages, punitive damages, costs, and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff moves for class certification and for judgment against Defendant, as alleged for statutory damages and punitive damages; for equitable and injunctive relief; and for attorneys' fees and costs, and other specific or general relief as the Court finds just and appropriate.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted,
**SHARON K. RIDDICK**,
*individually and on behalf of all
others similarly situated*


By: <u>/s/ Mark C. Leffler</u>
Mark C. Leffler, VSB# 40712
Leonard A. Bennett, VSB #37523
Emily Connor Kennedy, VSB #83889
Craig C. Marchiando, VSB #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: emily@clalegal.com
Email: mark@clalegal.com
Email: craig@clalegal.com

*Counsel for Plaintiff*