**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**SHARON K. RIDDICK**
*on behalf of herself and all others similarly situated,*

**Plaintiff,**

**v.** **Civil Action No. 2:24-cv-00700-JKW-LRL**

**CHEX SYSTEMS, INC.,**

**Defendant.**

## AMENDED CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, SHARON K. RIDDICK ("Plaintiff"), *on behalf of herself and all individuals similarly situated*, by Counsel, and for her Complaint against CHEX SYSTEMS, INC. ("ChexSystems" or "Defendant"), she alleges as follows:

## PRELIMINARY STATEMENT

1. Section 1681e(b) is one of the cornerstone provisions of the Fair Credit Reporting Act ("FCRA"), requiring consumer reporting agencies ("CRAs") like Defendant to maintain reasonable procedures to assure maximum possible accuracy in their credit reporting. 15 U.S.C. § 1681e(b).

2. ChexSystems is a "nationwide specialty consumer reporting agency under the Fair Credit Reporting Act" whose "services primarily assist clients in assessing the risk of opening new accounts". About ChexSystems, https://www.chexsystems.com/about-chexsystems (last visited Nov. 1, 2024).

3. Although ChexSystems is not as well-known as the "Big 3" consumer reporting agencies—Equifax, Experian, and Trans Union—the harm that a consumer can experience from inaccurate ChexSystems reporting is both significant and far-reaching.

4. For example, a derogatory mark on a ChexSystems report can preclude an individual from participating in the traditional banking system and obtaining an FDIC-insured checking or savings account.

5. This scenario is exactly what happened to Plaintiff, after ChexSystems inaccurately reported an overdrawn account with SunTrust as though it were an ongoing obligation instead of a debt that had been discharged in bankruptcy.

6. This consumer class action challenges the uniform policies and procedures of Defendant ChexSystems regarding debts discharged through consumer bankruptcy cases.

7. Defendant has failed to implement any policies or procedures for ensuring that it properly reports debts that are discharged in Chapter 7 and Chapter 13 bankruptcy cases, and Defendant wrongfully and systematically reports these discharged debts as due and owing and/or past due. Defendant's practices deprive consumers of their important statutory right under 15 U.S.C. § 1681e(b) to have *only* maximally accurate information reported on their credit.

**JURISDICTION**

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

9. Venue is proper in this District and Division because a substantial part of the events and omissions giving rise to the claim occurred in this District and Division. Plaintiff resides here, and she filed her bankruptcy here. The entire Virginia sub-class resides in the Commonwealth of Virginia.

## PARTIES

10. Plaintiff Sharon K. Riddick is a natural person, a resident of the Norfolk Division, and a "consumer" as defined by 15 U.S.C. §1681a(c).

11. Defendant CHEX SYSTEMS, INC. ("Chex Systems") is a limited liability company authorized to do business in the Commonwealth of Virginia through its registered offices in Glen Allen, VA. Chex Systems is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Chex Systems is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d).

## FACTS

### *Plaintiff's Experiences*

12. On or around March 8, 2024, Plaintiff applied for a bank account with Chartway Federal Credit Union and was denied.

13. An employee of Chartway Federal Credit Union informed Plaintiff that the denial was due to a still owing overdrafted account with SunTrust Bank.

14. On or around March 25, 2024, Plaintiff obtained a copy of her credit file with ChexSystems, which showed an inquiry from Chartway Federal Credit Union on 03/08/2024.

15. While reviewing her credit file, Plaintiff discovered that ChexSystems was reporting a SunTrust Bank account inaccurately.

16. Specifically, ChexSystems was reporting an "Original Charge Off Amount" of $458.66, a status of "UNPAID", and a Status Date of 07/12/2019.

17. In the credit reporting and credit industries, the status of "Unpaid Chargeoff" means that "your creditor essentially gives up trying to collect and writes the amount off as an unpaid

balance. However, you're still responsible for repaying, the debt and your creditor may sell the charge-off to a collection agency." https://www.experian.com/blogs/ask-experian/what-is-a-charge-off/#:~:text=The%20outstanding%20balance%20on%20a,negative%20than%20unpaid%20charge%2Doffs.

18. In fact, in the credit reporting industry, this status is understood such that, "The outstanding balance on a charge-off account is still your debt, and you are legally responsible to repay it—either to the original creditor or the agency that buys the debt." *Id.*

19. However, a previously unpaid chargeoff that is no longer owing may still be "considered derogatory entries on your credit report, but some lenders view them as less negative than unpaid charge-offs." *Id.*

20. Under the FCRA, it is not sufficient for a CRA to report information that is technically accurate. Rather, in the Fourth Circuit (though apparently not in the District of Kansas):

> [I]n *Dalton* we addressed the duty of a CRA to report accurately pursuant to § 1681e. 257 F.3d at 415. We held that a report "is inaccurate" not only "when it is 'patently incorrect' " but also "when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse[ ]' effect." *Id.* (quoting *Sepulvado v. CSC Credit Servs.,* 158 F.3d 890, 895 (5th Cir.1998)). Thus, we held that a consumer report that contains technically accurate information may be deemed "inaccurate" if the statement is presented in such a way that it creates a misleading impression. *See id.* at 415–16.

*Saunders v. Branch Banking And Tr. Co. Of VA*, 526 F.3d 142, 148 (4th Cir. 2008).

21. This information was misleading and inaccurate because it was outdated and incomplete. Plaintiff obtained a bankruptcy discharge in September of 2019 from the United States

Bankruptcy Court for the Eastern District of Virginia and the SunTrust account was included in her discharge.

22. The facts of the bankruptcy filing and the discharge, as well as the date it occurred, is publicly available on the bankruptcy docket that can be easily and cost effectively accessed on www.pacer.gov or through numerous commercial services.

23. The information showing that this debt was discharged was easily, cost-effective, and publicly available to Defendant before it furnished the subject credit report regarding Plaintiff.

24. Defendant could have caught the inaccuracies if it implemented and followed even simple automated processes within its reporting procedures.

25. If Defendant had reasonable procedures (or any procedures whatsoever) to assure maximum possible accuracy of this information, it would have easily determined that the account was discharged in Plaintiff's Bankruptcy. Defendant could learn this information easily by reviewing the bankruptcy records and know that the debt was discharged without any further verification from the credit furnisher.

26. Defendant has ZERO procedures in place to check the reporting of its customer-subscribers against the public bankruptcy record.

27. As a result of Defendant's conduct, Plaintiff and the putative class members suffered particularized and concrete injuries, including damages to their reputations, reductions to their credit scores, increased risks that they would be denied access to credit, and increased risks that they would be denied access to checking and savings accounts. *In re Helmes*, 336 B.R. 105 (Bankr. E.D. Va. 2005) (explaining "a credit report entry that reflects a past due account is treated differently by prospective creditors in evaluating credit applications than an entry that reflects a debt that has been discharged in bankruptcy. The essential difference is that a discharged debt

represents a historical fact, that the prospective borrower filed bankruptcy in the past and was relieved from the obligation. Nothing is now due. A past due debt represents a delinquent but legally enforceable obligation that must be resolved.").

28. ChexSystems is used by over 80% of U.S. banks to track consumers' banking histories, and a negative report from ChexSystems can lead to restricted banking access for five years. https://credit.org/blogs/blog-posts/restoring-your-banking-privileges-with-a-negative-chexsystems-report.

29. If your ChexSystems report shows outstanding fees or unpaid obligations, [the consumer will] likely need to address these issues before opening a new account. *Id*.

***Defendant's Business Model and Notice Regarding Bankruptcy Inaccuracies***

30. If Defendant had reasonable procedures (or, perhaps any procedure) to assure maximum possible accuracy, it would have easily determined that this account was discharged in bankruptcy.

31. However, upon information and belief, despite the abundance of notice available to Defendant regarding the frequent errors in bankruptcy related credit information, Defendant does not independently review the information that it receives from furnisher customers.

32. Instead, Defendant merely parrots the information about accounts included in bankruptcy that it receives from furnishers, without taking any additional steps to ensure that the accounts are updated after a consumer receives a discharge.

33. Discovery will show that Defendant has actual knowledge of the problems associated with its systematic, erroneous reporting of discharged debts as due and owing, having received numerous direct consumer disputes about this same systemic failure and having been sued on multiple occasions, yet it deliberately chooses to ignore these problems because reviewing

and/or cross-checking the data would reduce its bottom line and remove the incentives it creates on consumers to repay debts to Chex Systems' customers (even if no longer owed).

34. Further, Defendant also received actual notice of the problem alleged here through consumer complaints communicated by the Consumer Financial Protection Bureau. In fact, such complaints were numerous, beginning in 2015 and continuing even through January of 2025. For example, one consumer complained, "Chex systems is reporting information that should be under a bankruptcy preventing me from reestablishing my credit and to obtain a bank account." Another told Defendant through the CFPB, "The information is misleading and incorrect there are items are on there that were included in bankruptcy, and is prohibit me from opening an accounts." And still another wrote, "Back in xxxx/2017 i sent complaints to chex systems concerning accounts that were included in my bankruptcy and complaints to all the banking institutions concerning matters that were reflecting as an open collections under my name with chex systems. I received a response from all the financial institutions stating that these accounts would be removed from chex sysytems. To date chex systems has not removed these items and these complaints went through the cfpb because chex systems refused delete these collection items from their files. Please find the following complaints numbers : xxxx chex systems xxxx chex systems xxxx xxxx xxxx xxxx chex systems , inc . Xxxx xxxx xxxx xxxx xxxx xxxx xxxx xxxx chex systems , inc . Xxxx xxxx xxxx xxxx xxxx xxxx xxxx i received response from a bank institution that my score is very low with chex systems due to the following : chex systems consumer score : xxxx scores range from a low of xxxx to a high of xxxx. Key factors that adversely affected your credit score : xxxx previous debit inquiry history xxxx credit activity : excessive recent installment trades xxxx reported debit closure xxxx delinquent or derog credit behavior xxxx credit and chex inqs may have adversely impacted the score." These are typical of the many complaints made by consumers and sent to

Defendant by the CFPB.

35. Discovery will show that Chex Systems was on notice that SunTrust was not a presumptively reliable source. Chex Systems did not conduct any audit or examination of the correctness and accuracy of its reporting. And Defendant has received numerous consumer complaints regarding the inaccuracy of SunTrust's reporting.

36. Defendant does not ever conduct an initial "investigation" to measure the reliability of a customer or its data generally before reporting it.

37. At all times relevant to this Complaint, Defendant's conduct was willful and carried out in reckless disregard for consumers' rights under the FCRA. By example only and without limitation, Defendant's conduct was willful because it ran a risk of harm that was known or so obvious it should have been known by failing to implement any procedure to identify and correct these common errors prior to furnishing reports.

38. Despite being a business, whose very core is data and reporting it accurately, Defendant (much like many other CRAs) takes the well-worn position that "bankruptcy is hard," and fraught with such a multitude of potential pitfalls that it should not be required to interpret the plain meaning of things on a bankruptcy docket.

39. Prior litigation and government oversight has highlighted these systematic issues. Defendant failed to adopt any procedures despite the fact that CRAs have long been subject to court decisions critical of similar conduct. *See White v. Experian Info. Solutions, Inc.*, et al. Case No. 8:05-cv-01070 (C.D. Cal. Aug. 19. 2008)*; Solomon v. Equifax Information Services, LLC*, No. 3:19-cv-255-JAG (E.D. Va. Filed April 10, 2019); *Acosta v. Trans Union*, 243 F.R.D. 377, n.3 (C.D. Cal. 2007) (citing a bankruptcy lawyer's survey of approximately 900 clients found that 64% of Trans Union reports and 66% of Equifax reports erroneously list one or more discharged

debts as due and owing); *see also* Federal Trade Comm., 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT, at 67 (July 2011) ("However, when a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.").[1]

***Defendant has the Ability to Easily Obtain Bankruptcy Information & Chooses Not To***

40. Under its current procedures (if any), Chex Systems "parrots" whatever the furnisher tells it regarding debts and does not take any action to confirm that the debt has not been discharged in a bankruptcy.

41. Through its current practice, Chex Systems places on the onus on individual consumers to inform Chex Systems if it is reporting inaccurate information about a discharged debt, yet even then, it systemically refuses to remove or correct its customer's reporting.

42. Chex Systems has attempted to shift part of its burden as a CRA—the requirement of procedures for reporting maximally accurate information—to the individual consumers who are harmed by its reporting.

43. Instead of checking the data itself, Chex Systems relies on consumers to send it disputes regarding discharged debts that it reports inaccurately. One of the significant problems with this approach is that, although many (if not most) consumers in the United States are familiar

---

[1] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

with at least one of the "Big 3" consumer reporting agencies (such as Equifax), very few are aware that Chex Systems exists.

44. For most consumers who are familiar with Chex Systems, the first time they heard the "Chex Systems" name was immediately after being denied a deposit account.

45. By the time most of these consumers learn what Chex Systems is, they have already been damaged by Chex System's inaccurate reporting.

46. No one is forcing Chex Systems to operate as a consumer reporting agency. It is a choice that the owners and founders of Chex Systems have made.

47. Because Chex Systems has chosen to sell consumer reports, it is subject to the same requirements under the Fair Credit Reporting Act as any other consumer reporting agency.

48. Under the Fair Credit Reporting Act, consumer reporting agency Chex Systems is required to maintain reasonable procedures to assure maximum possible accuracy of the information in the consumer reports it sells.

49. Chex Systems is aware of the risks associated with furnishers failing to report that a debt is discharged in bankruptcy.

50. The "Big 3" consumer reporting agencies, Equifax, Experian, and Trans Union, all include bankruptcy information in their consumer reports.

51. Chex Systems has multiple options for learning whether a consumer who is the subject of a Chex Systems report has obtained a discharge in bankruptcy.

52. Modern consumer reporting agencies, including Equifax, TransUnion, Experian and LexisNexis, by example only, have implemented simple automated processes to access, download and incorporate or compare bankruptcy discharge data from PACER. No human need even be involved.

53. Chex Systems could then use that information and implement a presumption that certain debts were discharged, like the presumptions that Equifax, Experian, and Trans Union agreed to use in the *White v. Experian* settlement order. *See White v. Experian Info. Solutions, Inc.*, et al. Case No. 8:05-cv-01070 (C.D. Cal. Aug. 19. 2008) (approval order regarding settlement agreement and release), *available at* https://library.nclc.org/sites/default/files/unreported/White_Order.pdf.

54. Unlike the presumptions implemented by the *White* order, which required consideration of many different categories of debts (general unsecured creditors, secured creditors, domestic support obligations, etc.), Chex Systems would only need to apply a presumption for one type of debt: overdrawn deposit accounts.

55. If Chex Systems did not want to rely on using PACER, it could use a bankruptcy notification service, such as Lexis Nexis's Banko[2]:

**Leveraging millions of bankruptcy records dating back 10 years, LexisNexis® Banko Bankruptcy Solutions provide automated daily notifications of bankruptcy filings and continual monitoring of changes during bankruptcy resulting in reduced paper flow and minimized operational expenses for your organization.**

LexisNexis® Risk Solutions takes a consultative approach with our customers. We customize our solutions by incorporating our extensive knowledge of the bankruptcy process and focusing on what is important to you – understanding your challenges, recognizing your priorities and helping you achieve your goals.

This understanding enables us to develop a successful solution strategy that:

- Maximizes efficiency by storing your entire portfolio and delivering daily updates to you regarding new filings and/or changes in status
- Minimizes stay violations
- Automates manual processes of opening mail – looks up account to locate account number on your system
- Tracks activity after the initial filing
- Saves you money on employee costs – no need to manually look up cases on Pacer
- Sends you a full notification (even if you are not listed on the Creditor's Matrix)
- Sends you notifications of dismissals so accounts can be immediately returned to collection queues
- Send you notifications of discharged/re-instated/closed or converted cases

56. Alternatively, because Defendant already has a relationship with Experian that it uses to sell monthly subscription credit monitoring services to consumers[3], it could obtain bankruptcy information from its business partner, Experian.

57. In fact, Defendant is deliberately blind as it already has available this Experian data showing the discharge, yet refuses to look at it or consider it within its reporting process.

[2] Lexis Nexis, Banko Solutions Brochure (2016), https://risk.lexisnexis.com/-/media/files/product%20pages/brochure/lnrs_banko-bankruptcy-solutions_brochure_nxr11574-00-1116-en-us.pdf.

[3] OnAlert from ChexSystems, https://www.chexsystems.com/onalert (last visited February 21, 2025).

58. Defendant voluntarily chooses to sell consumer credit reports as its business. Because it chooses to sell consumer reports regarding consumer debts, Defendant has a legal obligation to report those debts accurately.

59. The Fair Credit Reporting Act that governs Chex Systems is the same Fair Credit Reporting Act that governs Equifax, Experian, and Trans Union.

60. There is no special carve-out that holds Chex Systems to a lower standard simply because Chex Systems chooses to focus on one type of debt only.

61. The standards that compel Equifax, Experian, and Trans Union to accurately report bankruptcy information—and not rely solely on furnishers to determine whether a debt is discharged—are the same standards that apply to Chex Systems.

## COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)
## Class Claim

62. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length in this paragraph.

63. **The 1681e(b) Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class initially defined as follows:

> All natural persons who (1) were the subject of a consumer report furnished by Defendant to a third party within five years before the filing of this action; (2) where the report indicated an outstanding balance or a past due indication on an account scheduled as a debt in a Chapter 7 or Chapter 13 bankruptcy which resulted in the entry of a Discharge Order.
>
> Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

64. **The Virginia 1681e(b) Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class initially defined as follows:

> All natural persons with a primary address located in Virginia, within Defendant's file who (1) were the subject of a consumer report furnished by Defendant to a third party within five years before the filing of this action; (2) where the report indicated an outstanding balance or a past due indication on an account scheduled as a debt in a Chapter 7 or Chapter 13 bankruptcy which resulted in the entry of a Discharge Order.
>
> Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

65. **Numerosity**. Upon information and belief, Plaintiff alleges that the 1681e(b) class and subclass are so numerous that joinder of the claims of all class members is impractical. The names and addresses of the class members are identifiable through documents maintained by Defendant and the class members may be notified of the pendency of this action by publication or mailed notice.

66. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant had reasonable procedures to assure that it did not wrongfully list one or more discharged debts as due and owing and/or past due; (b) whether this conduct constituted a violation of the FCRA; and (c) whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of the Plaintiff and putative class members.

67. **Typicality**. Plaintiff's claims are typical of the claims of each putative class member and all are based on the same facts and legal theories. Plaintiff, as every putative class member, alleges a violation of the same FCRA provision, 15 U.S.C. § 1681e(b). This claim challenges the credit reporting procedures of Defendant and does not depend on any individualized facts. For purposes of class certification, Plaintiff seeks only statutory and punitive damages. The

recovery of class statutory and punitive damages is ideal and appropriate in circumstances like this one, where injuries are particularized and concrete, but difficult to quantify. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the class.

68. **Adequacy**. Plaintiff will fairly and adequately protect the interests of the class and subclass. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and have accepted those responsibilities.

69. Certification of the class and subclass under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a. As alleged above, the questions of law or fact common to the members of the class and subclass predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues. Given the complex and extensive litigation necessitated by Defendant's conduct, using individual prosecution to obtain the statutory and punitive damages sought by each member would prove burdensome and expensive. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford to bring their claims individually. Further, most consumers affected by Defendant's conduct described above are likely unaware of their rights under the law or of whom they could find to

represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

70. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff and the putative class members, by wrongfully listing one or more discharged debts as due and owing and/or past due where it was apparent that the consumer had received a bankruptcy discharge in a Chapter 7 or Chapter 13 bankruptcy case.

71. Defendant's violations of 15 U.S.C. § 1681e(b) were willful, rendering Defendant liable pursuant to 15 U.S.C. § 1681n.

72. Plaintiff and the putative class members are entitled to recover statutory damages, punitive damages, costs, and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff moves for class certification and for judgment against Defendant, as alleged for statutory damages and punitive damages; for equitable and injunctive relief; and for attorneys' fees and costs, and other specific or general relief as the Court finds just and appropriate.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted,
**PLAINTIFF**, *individually and on behalf of all others similarly situated*

By: /s/ Mark C. Leffler
Leonard A. Bennett, VSB #37523
Emily Connor Kennedy, VSB #83889
Mark C. Leffler, VSB# 40712
Craig C. Marchiando, VSB #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A

Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: emily@clalegal.com
Email: mark@clalegal.com
Email: craig@clalegal.com

*Counsel for Plaintiff*