**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| SHARON K. RIDDICK, *on behalf of herself and all others similarly situated,*<br><br>Plaintiff,<br>v.<br><br>CHEX SYSTEMS, INC.<br><br>Defendant. | Case No. 2:24-cv-00700-EWH-RJK |

**CHEX SYSTEMS, INC.'S OPPOSITION TO**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 4

A. Background on ChexSystems .......... 4

1. ChexSystems sells QualiFile consumer reports .......... 4

2. ChexSystems employs robust procedures for furnishers. .......... 5

a. ChexSystems conducts a robust furnisher credentialing process. .......... 5

b. The data contribution policies require furnishers to accurately report accounts. .......... 6

c. ChexSystems has data contribution policies specific to bankruptcy. .......... 6

d. ChexSystems actively monitors its furnishers. .......... 7

3. Plaintiff's theory of systematic inaccuracy has no evidentiary support. .......... 9

4. Plaintiff's proposed "scrub" is neither streamlined nor fit to the class. .......... 10

B. The Facts Pertaining to Plaintiff .......... 13

1. July 24, 2017 - Plaintiff Files Chapter 13 Bankruptcy .......... 13

2. June 17, 2019 - Plaintiff Converts Her Chapter 13 Bankruptcy to Chapter 7 .......... 13

3. July 2019 - SunTrust Closes, Charges Off, and Reports Plaintiff's Account. .......... 13

4. September 26, 2019 - Bankruptcy Discharge .......... 14

5. January 11, 2024 and March 8, 2024 – Chartway Account Application .......... 14

6. March and October 2024 - Plaintiff's Correspondence with ChexSystems .......... 15

7. October 2024 - Plaintiff opens Bank of America account .......... 16

C. There is no evidence that any specific furnisher, let alone SunTrust, is unreliable. ........ 16

III. PROCEDURAL BACKGROUND ........ 17

IV. LEGAL STANDARD ........ 18

V. ARGUMENT ........ 18

A. Plaintiff is atypical of the Proposed Class and inadequate as a class representative. ........ 18

1. Plaintiff is not adequate because she is not a member of the Proposed Class. ........ 19

2. Plaintiff's proposed "scrub" would make absolutely no difference to her. ........ 21

3. Plaintiff's bankruptcy does not "objectively show" her debt was discharged. ........ 22

4. There is no evidence that SunTrust is a systematically unreliable furnisher. ........ 23

5. Plaintiff lacks standing, which prohibits her from representing others. ........ 24

B. Plaintiff fails to satisfy Rule 23's requirements of commonality and predominance because individualized issues predominate over common issues. ........ 26

1. Plaintiff cannot demonstrate through common proof that ChexSystems sold actionably inaccurate consumer reports for each Proposed Class member. ........ 27

a. It is not "objectively" or "readily" verifiable that Plaintiff's bankruptcy discharged her Account ........ 28

b. Plaintiff cannot avoid the individualized details of bankruptcy by claiming that ChexSystems should just presume accounts are discharged across the class. ........ 29

2. Individualized issues of standing and causation preclude Plaintiff from prosecuting this matter on behalf of the Proposed Class. ........ 32

a. Plaintiff has no evidence of classwide loss of banking opportunities. ........ 33

b. Plaintiff has no evidence of classwide reputational harm. ........... 34

3. Plaintiff cannot prove that ChexSystems failed to use reasonable procedures with respect to the class based on common proof. ................ 35

4. The Court cannot properly certify a nationwide class if ChexSystems could assert defenses in other jurisdictions. ...................... 37

5. Plaintiff cannot prove that ChexSystems willfully violated the FCRA with respect to the class based on common proof. ....................... 38

C. Plaintiff's Proposed Class fails for lack of ascertainability. ................................ 40

1. Plaintiff has not defined an ascertainable class. ...................................... 40

2. Plaintiff impermissibly proposed a new class definition post-discovery. ................................................................................. 43

VI. CONCLUSION ................................................................................................ 45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*George v. Chex Systems, Inc.*,
No. 16-2450-JTM, 2017 WL 119590 (D. Kan. Jan. 12, 2017)....................2

*Rydholm v. Equifax Info. Servs. LLC*,
44 F.4th 1105 (8th Cir. 2022) ....................1, 31, 38, 44

*Abron v. Black & Decker (U.S.) Inc.*,
654 F.2d 951 (4th Cir. 1981) ....................19

*Alig v. Rocket Mortg., LLC*,
126 F.4th 965 (4th Cir. 2025) ....................33, 34

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)....................19, 26

*Anderson v. Westinghouse Savannah River Co.*,
406 F.3d 248 (4th Cir. 2005) ....................21

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
No. 3:20-MN-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) ....................42, 43

*Boczek v. Pentagon Fed. Credit Union*,
No. 1:23-CV-43, 2025 WL 3068570 (N.D.W. Va. Nov. 3, 2025) ....................26

*In re Brown*,
659 B.R. 868 (Bankr. D.S.C. 2024)....................30

*Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*,
91 F.4th (4th Cir. 2024) ....................43

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3d Cir. 2013)....................38

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)....................2

*Cordoba v. DIRECTV, LLC*,
942 F.3d 1259 (11th Cir. 2019) ....................35

*Dalton v. Cap. Associated Indus., Inc.*,
257 F.3d 409 (4th Cir. 2001) ....................27

*Ealy v. Pinkerton Gov't Servs., Inc.*,
514 F. App'x 299 (4th Cir. 2013) ....................19, 39

*EQT Prod. Co. v. Adair*,
764 F.3d 347 (4th Cir. 2014) ....................40, 43

*Farmer v. Phillips Agency, Inc.*,
285 F.R.D. 688 (N.D. Ga. 2012)....................32

*Felts v. Wells Fargo Bank, N.A.*,
893 F.3d 1305 (11th Cir. 2018) ....................22

*Fernandez v. RentGrow, Inc.*,
116 F.4th 288 (4th Cir. 2024) ....................34

*Freeman v. Progressive Direct Ins. Co.*,
149 F.4th 461 (4th Cir. 2025) ....................18

*Gomez v. Kroll Factual Data*,
2014 WL 1456530 (D. Colo. Apr. 14, 2014)....................32, 33, 39

*Guthrie v. PHH Mortg. Corp.*,
79 F.4th 328 (4th Cir. 2023) ....................29

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)....................18

*Haney v. USAA Cas. Ins. Co.*,
331 F. App'x 223 (4th Cir. 2009) ....................26

*Harper v. TransUnion, LLC*,
2006 WL 3762035 (E.D. Pa. Dec. 20, 2006)....................32, 35

*Heffner v. Elmore, Throop & Young, P.C.*,
No. CIV. PJM 11-3369, 2012 WL 2138097 (D. Md. June 12, 2012), *aff'd*, 513 F. App'x 293 (4th Cir. 2013) ....................20

*In re Jahanian*,
No. 08-10030-SSM, 2011 WL 710477 (Bankr. E.D. Va. Feb. 22, 2011) ....................20

*Jianqing Wu v. Trans Union, LLC*,
No. 03-1290, 2006 U.S. Dist. LEXIS 96712 (D. Md. May 2, 2006), *aff'd*, 219 F. App'x 320 (4th Cir. 2007) ....................24

*Jones v. Realpage, Inc.*,
No. 3:19-CV-2087-B, 2021 WL 852218 (N.D. Tex. Jan. 27, 2021) ....................32, 39

*Krakauer v. Dish Network, L.L.C.*,
925 F.3d 643 (4th Cir. 2019) ....................................................................................40

*In re Kubin*,
No. 18-02853, 2022 WL 1467643 (Bankr. N.D. Ill. May 9, 2022).......................................30

*Losch v. Nationstar Mortg. LLC*,
995 F.3d 937 (11th Cir. 2021) ....................................................................................36

*Mader v. Experian Info. Solutions, Inc.*,
56 F.4th 264 (2d Cir. 2023) ....................................................................................27, 28

*McFadden v. Equifax Info. Servs., LLC*,
No. 1:25-cv-1087-MSN-WBP, 2025 WL 3503039 (E.D. Va. Oct. 27, 2025) .................27, 32

*Mr. Dee's Inc. v. Inmar, Inc.*,
127 F.4th 925 (4th Cir. 2025) ....................................................................................35

*Muhammad v. PNC Bank, N.A.*,
No. 2:15-CV-16190, 2016 WL 5843477 (S.D.W. Va. Oct. 4, 2016) ....................................20

*Owner-Operator Indep. Drivers Ass'n, Inc v. USIS Com. Servs., Inc.*,
537 F.3d 1184 (10th Cir. 2008) ....................................................................................32

*In re Parks*,
No. 93-30327-S, 1996 WL 33676728 (Bankr. E.D. Va. Feb. 15, 1996)....................10, 23, 30

*Perez v. Medicredit*,
No. SACV18-2283JVS(JDEx), 2019 WL 3063514 (C.D. Cal. March 14, 2019) ....................................................................................22

*Piotrowski v. Wells Fargo Bank, NA*,
No. CIV.A. DKC 11-3758, 2015 WL 4602591 (D. Md. July 29, 2015)................................42

*Prado v. Wal-Mart Stores, Inc.*,
No. CV 17-05630 AB (KKX), 2018 WL 11346522 (C.D. Cal. Dec. 18, 2018) ....................26

*Roberts v. Carter-Young, Inc.*,
131 F.4th 241 (4th Cir. 2025) ....................................................................................27, 28

*Rose v. PrimeCare Med., Inc.*,
No. 5:22-CV-00405, 2025 WL 1417168 (S.D.W. Va. May 15, 2025)...................................23

*Rosedale v. CarChex, LLC*,
No. CV SAG-19-2780, 2020 WL 6801922 (D. Md. Nov. 19, 2020) ....................................20

*In re Rosenfeld*,
23 F.3d 833 (4th Cir. 1994) ....................................................................................20

*Schwab v. Reilly*,
560 U.S. 770 (2010).....23

*Scroggins v. Lexisnexis Risk Sols. Fl Inc.*,
No. 3:22CV545, 2025 WL 3216323 (E.D. Va. Mar. 30, 2025).....43, 45

*Smyth v. Carter*,
168 F.R.D. 28 (W.D. Va. 1996).....21

*Solomon v. Equifax Info. Servs., LLC*,
No. 3:19-CV-0266 (E.D.Va. Sept. 24, 2019).....45

*Soutter v. Equifax Info. Servs., LLC*,
498 F. App'x 260. (4th Cir. 2012).....26, 39, 40

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).....25

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).....33

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)..... *passim*

*Wilson v. First Advantage Background Servs. Corp.*,
No. 21-CV-06071-SRB, 2023 WL 5667905 (W.D. Mo. July 18, 2023)..... *passim*

*In re Woolard*,
190 B.R. 70 (Bankr. E.D. Va. 1995).....30

*Wright v. Experian Info. Solutions, Inc.*,
805 F.3d 1232 (10th Cir. 2015).....24

*In re Zetia (Ezetimibe) Antitrust Litig.*,
No. 2:18-MD-2836, 2020 WL 5778756 (E.D. Va. Aug. 14, 2020).....33

**Statutes**

11 U.S.C. § 523(a)(2).....30

11 U.S.C. § 524(c).....30

11 U.S.C. § 1328(a).....20

15 U.S.C. § 1681a(p).....5

15 U.S.C. § 1681e(b)..... *passim*

15 U.S.C. § 1681m....................34

15 U.S.C. § 1681n(a) ....................39

**Other Authorities**

Fed. R. Civ. P. 23.................... *passim*

Fed. R. Evid. 802 ....................25

<u>**TABLE OF EXHIBITS**</u>

| Exhibit | Title or Description | Bates | Confidential |
|---|---|---|---|
| 1. | Declaration of Lori Jones | | Yes |
| 2. | Declaration of Brenda Bruce | | Yes |
| 3. | Declaration of Laurie Husaby | | Yes |
| 4. | Declaration of Ronald Whyte | | Yes |
| 5. | Declaration of Dave Edwinson | | Yes |
| 6. | Declaration of Jacqueline Jackson, Chartway Federal Credit Union | Chex008089-008106 | |
| 7. | Rebecca Kuehn Expert Report | | Yes |
| 8. | David Kalat Expert Report | | Yes |
| 9. | Eric A. Schaffer Expert Report | | Yes |
| 10. | ChexSystems Supplemental Interrogatory | Answer No. 10 | Yes |
| 11. | Plaintiff Interrogatory | Answer No. 3 | |
| 12. | Sharron Riddick<br>Deposition Transcript | 45:20-21<br>57:9-13<br>58:25-59:3<br>66:5-18<br>68:6-8<br>69:18-25<br>75:14-18<br>78:18-24<br>82:1-83:4<br>83:15-84:2<br>84:16-20<br>89:23-90:13<br>90:3-91:12<br>91:6-92:5<br>92:6-93:17<br>94:18-21<br>96:22-24<br>99:9-23<br>101:16-23<br>102:20-103:3<br>103:16-25<br>106:18-107:13 | |

| | | | |
|---|---|---|---|
| | | 118:2-21<br>129:2-6<br>145:6-9<br>149:4-150:10<br>151:17-152:3<br>154:9-11<br>154:20-155:1<br>156:1-10 | |
| 13. | Sharron Riddick Discharge Order | Riddick000012-15;<br>Pl. Dep. Ex. 9 | |
| 14. | Truist Furnisher Monitoring Notice | Truist0007215-26 | Yes |
| 15. | Truist Dispute Procedures | Truist0017340–46 | Yes |
| 16. | Certification Concerning Unpaid Debts Pursuant to Local Rule 1017-1(A) | Riddick000010-11;<br>Pl. Dep. Ex. 6 | |
| 17. | Voluntary Conversion to Chapter 7 – Sharon Riddick | Chex007324; Pl. Dep. Ex. 4 | |
| 18. | Form 106C – Sharon Riddick | Chex007326-007346;<br>Pl. Dep. Ex. 7 | |
| 19. | Evans Hendricks<br>Deposition Transcript | 21:20-25<br>26:6-9<br>61:16-20<br>69:10-70:15<br>83:14-24<br>101:14-19<br>160:11-161:17 | |
| 20. | Jonathan Jaffe<br>Deposition Transcript | 54:21-55:8<br>102:11-15<br>110:2-3 | |
| 21. | H. David Cox<br>Deposition Transcript | 80:19-90:25<br>85:10-16<br>91:7-10<br>106:13-17<br>115:12-25 | |
| 22. | Laurie Husaby<br>Deposition Transcript | 100:8-21 | Yes |

## DECLARATION TABLE OF EXHIBITS

| Title or Description | Declaration Exhibit | Bates | Confidential |
|---|---|---|---|
| ChexSystems Furnisher Credentialing Form | Jones Decl. Ex. A<br>Husaby Decl. Ex. A | Chex007241-50 | Yes |
| Financial Services Agreement with BB&T | Jones Decl. Ex B | Chex000100-107 | Yes |
| Data Contribution Policy v2.9 | Husaby Decl. Ex. B<br>Jones Decl. Ex. C | Chex000283-290 | Yes |
| ChexSystems Furnisher Monitoring Outreach Correspondence with Truist | Jones Decl. Ex. I | Chex007257 | Yes |
| Data Contribution Deposit Accounts V002 Batch Specification 1.11 | Husaby Decl. Ex. C<br>Jones Decl. Ex. D<br>Bruce Decl. Ex. C | Chex000201-282<br>Chex007508-7589 | Yes |
| Chex Systems Inc. Data Contribution Deposit Accounts V001 Batch Specification | Husaby Decl. Ex. D<br>Jones Decl. Ex. E | Chex000435-500 | Yes |
| Bankruptcy Deletes Spreadsheet – First 500 entries | Jones Decl. Ex. F<br>Husaby Decl. Ex. E | Chex006969 | Yes |
| Bankruptcy Deletes Spreadsheet – SunTrust and Truist entries | Husaby Decl. Ex. G<br>Jones Decl. Ex. G | Chex006969 | Yes |
| Compliance Correspondence with Truist | Jones Decl. Ex. H | Chex0007203-13 | Yes |
| Compliance Monitoring Suspension List | Jones Decl. Ex. J<br>Whyte Decl. Ex. A | Chex007423 | Yes |
| LexisNexis Risk Solutions FCRA Reseller Agreement | Bruce Decl. Ex. D | Chex007432-77 | Yes |
| SQL Record Requests,<br>Sharon Riddick | Edwinson Decl. Ex. A. | Chex007424 | Yes |
| Sharon Riddick, Consumer File Disclosure Report, March 22, 2024 | Husaby Decl. Ex. F | Chex000001-9 | Yes |
| Business Requirements v4.1 - Advantage QF Strategies - US Bank | Bruce Decl. Ex. A | Chex006994-7007 | Yes |

| Title or Description | Declaration Exhibit | Bates | Confidential |
|---|---|---|---|
| BMO Bank NA Branch Debit Stgy Business Requirements v3.5 - Strategy ID 698 08252025 | Bruce Decl. Ex. B | Chex007040-7052 | Yes |
| Chartway Account Application Notes, Sharon K. Riddick, Application January 11, 2024 | Jackson Decl. Ex. A | Chex008094-008096 | Yes |
| January 11, 2024 QualiFile Report | Jackson Decl. Ex. B<br>Bruce Decl. Ex. E | Chex008097-8099 | Yes |
| Chartway Account Application Notes, Sharon K. Riddick, Application March 8, 2024 | Jackson Decl. Ex. C | Chex008100-008102 | Yes |
| March 8, 2024 QualiFile Report | Jackson Decl. Ex. D<br>Bruce Decl. Ex. F | Chex008103-8106 | Yes |

Chex Systems, Inc. ("ChexSystems") submits this Opposition to Sharon Riddick's ("Plaintiff") Motion for Class Certification (the "Motion").

## I. INTRODUCTION

How much case law and agency guidance must run counter to Plaintiff's theory before she will acknowledge it is not the law? We do not know the answer, but clearly it is a lot.

Plaintiff claims ChexSystems violates the Fair Credit Reporting Act ("FCRA") because, in the bankruptcy context, it is supposedly always unreasonable to rely on financial institutions to furnish accurate account information to ChexSystems. Plaintiff argues ChexSystems must "scrub" furnisher's records against PACER or other sources to assess whether any reported account was discharged in bankruptcy. Her only source for this supposed requirement is a voluntary settlement that three unrelated national consumer reporting agencies—Experian, Equifax, and TransUnion—reached over a decade ago in the *White-Hernandez* case. ChexSystems is not a national consumer reporting agency and was not a party to the *White-Hernandez* settlement.

One might think Plaintiff would have reams of law in her corner before inventing a standard that says ChexSystems cannot rely on financial institutions and, must, instead, conduct a pre-report investigation of all accounts for bankruptcy discharges. But the opposite is true.

- The Federal Trade Commission has confirmed a consumer reporting agency ("CRA") employs "reasonable procedures" when it requires "***its creditors to notify the CRA when a previously past due account has been paid or discharged in bankruptcy***." Kuehn Rep. 20, **Ex. 7** (quoting FTC 40 Years Report).
- The Eighth Circuit has confirmed that CRAs ***are not required to "wade into individual bankruptcy dockets to discern whether a debt survived discharge."*** *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1109 (8th Cir. 2022) (emphasis added).

- A District Court specifically confirmed as to ChexSystems that ***"the 'maximum possible accuracy' standard of § 1681e does not require Chex[Systems] to check PACER prior to preparing a report."*** *George v. Chex Systems, Inc.*, No. 16-2450-JTM, 2017 WL 119590, at *3 (D. Kan. Jan. 12, 2017) (emphasis added).

The Court need not decide these issues now. But it is clear that Plaintiff cannot represent a class when litigating them. A "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation omitted). Plaintiff must prove—not merely assert—that the case satisfies Rule 23. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). She has not done so.

First, Plaintiff has not proven that she is typical of the proposed class she seeks to certify.

Plaintiff is not part of the purported class. She seeks to certify a class of individuals who, among other things, were the subject of a report that "indicated an outstanding balance or a past due indication on an account existing on the date such person filed a Chapter 7 bankruptcy." Mot. 8. The proposed class is people whose reports displayed a past due debt that pre-dated the bankruptcy petition. ***Plaintiff is not in this group.*** Plaintiff "filed a Chapter 7 bankruptcy" on June 17, 2019. The only date in ChexSystems' records pertaining to the SunTrust[1] account at issue (the "Account") was the July 12, 2019 date of account closure—a date that was nearly a month *after* Plaintiff's bankruptcy. This ends her bid to certify a class.

Next, the Motion presents *no* admissible evidence that Plaintiff suffered an injury-in-fact. Rule 23 is not "a mere pleading standard." *Comcast*, 569 U.S. at 33. Plaintiff must satisfy Rule 23 "through evidentiary proof." *Id.* Yet, nearly the entire section of "facts" pertaining to Plaintiff in

[1] BB&T and SunTrust Bank merged to form Truist Bank. ChexSystems refers to the merged entity as SunTrust for consistency, despite it currently operating as Truist.

the Motion is a regurgitation of the *allegations* in the Complaint and her purported experts' parroting of those allegations. Mot. 6-7. When one removes the allegations in the Motion pertaining to Plaintiff, and focuses only on *evidence*, there is actually nothing there. Mot. 6.

The *actual facts* tell a story that diverges wildly from Plaintiff's allegations. There are two ChexSystems' consumer reports at issue—both provided to Chartway Federal Credit Union ("Chartway"). Each report recommended Chartway "ACCEPT" Plaintiff and "OPEN" an account. But Plaintiff never submitted the supplemental information Chartway requested, which meant the applications just sat. Plaintiff was never denied, let alone denied based on ChexSystems' reports.

Last, Plaintiff is atypical because she is subject to unique factual defenses. She cannot show that the lack of a bankruptcy "scrub" made any difference whatsoever to her ChexSystems' reports and cannot show SunTrust is an unreliable furnisher. The evidence shows the opposite.

<u>Second</u>, Plaintiff cannot satisfy predominance. She must supply convincing evidence that she can demonstrate classwide liability and injury-in-fact using common, classwide proof. Yet, Plaintiff fails to present classwide evidence on multiple core liability issues: allegedly inaccurately reporting debts discharged in bankruptcy, classwide harm from the reporting, and uniformly unreasonable procedures. Plaintiff ignores these core individualized issues, instead asking the Court to just assume inaccuracy, harm, and unreasonable procedures across the purported class.

<u>Finally</u>, Plaintiff has not provided any evidence showing a class can be reasonably ascertained. Plaintiff claims that her purported data expert, Mr. Jaffe, has designed a process to automatically identify class members. But even a cursory review of his work shows that his "automatic" analysis never examined whether a specific account was actually discharged in bankruptcy—his work does not even track the class definition. This, of course, is consistent with Plaintiff's own bankruptcy expert, Mr. Cox, who confirmed that *actually* determining discharge

requires a multi-step, manual review of each underlying case. Cox Rep. 11, Dkt. No. 97-6.

Plaintiff began this litigation with bold claims that ChexSystems had "actual knowledge of the problems associated with its systematic, erroneous reporting of discharged debts as due and owing" based on "numerous direct consumer disputes about this same systemic failure." Am. Compl. ¶ 33. The Court relied on these allegations in denying ChexSystems' motion to dismiss. But discovery proved they were just brash allegations with no factual basis. ChexSystems has robust processes pertaining to accuracy, and Plaintiff has no evidence that furnishers are systematically unreliable or that ChexSystems systematically and erroneously misreports account closures. Plaintiff's own analysis of a [redacted]-report data sample indicated that, at worst, ChexSystems' bankruptcy-related error rate was [redacted] reports a year. Mot. 9. No reasonable jury could conclude that [redacted]% accuracy is "systematic, erroneous reporting."

A class is an exception to the usual rule of individual litigation. Plaintiff has not provided sufficient evidence showing that this exception is justified here. The Court should deny the Motion.

## II. STATEMENT OF FACTS

### A. Background on ChexSystems

#### 1. ChexSystems sells QualiFile consumer reports

ChexSystems is a consumer reporting agency that specializes in providing consumer reports to financial institutions to use when opening new consumer bank accounts. Jones Decl. ¶ 5, **Ex. 1**. In short, financial institutions report to ChexSystems instances when they forcibly close a consumer's bank account. *Id.* The closure could be for many reasons—for example, the consumer engaged in account abuse or suspected fraud. *Id.* When a consumer seeks to open a new account at a financial institution that is a ChexSystems customer, that institution will order a ChexSystems "QualiFile" report, which includes the consumer's prior closure history, if any. *Id.* ¶ 6.

ChexSystems does not make account opening decisions for its customers. Bruce Decl. ¶ 5, **Ex. 2**. Instead, customers select a criteria for assessing a consumer's closure history—a decisioning strategy—and ChexSystems includes a recommendation in a QualiFile report based on the customer's chosen strategy. Jones Decl. ¶ 7; Bruce Decl. ¶ 5. Customers choose their own individual decisioning strategies. Bruce Decl. ¶¶ 7-8; Chex006994-7007, **Ex. 2-A**; Chex007040-7052, **Ex. 2-B**; Jones Decl. ¶ 7.

ChexSystems is fundamentally different than Equifax, Experian, and TransUnion (the "National Bureaus"). ChexSystems does not report credit tradelines—it reports whether a bank account has been forcibly closed. Bruce Decl. ¶ 5; Whyte Decl. ¶ 5, **Ex. 4**. ChexSystems also does not report public records, including bankruptcies or judgments. Bruce Decl. ¶ 13; Chex007508-89, **Ex. 2-C**. Nor does it utilize bankruptcies or judgments in any decisioning strategy. Bruce Decl. ¶¶ 18-19. National Bureaus report public records—that is a definitional requirement. *See* 15 U.S.C. § 1681a(p). ChexSystems does not. Bruce Decl. ¶ 19.

**2. ChexSystems employs robust procedures for furnishers.**

ChexSystems receives account closure information from furnishers. Plaintiff suggests that ChexSystems has minimal procedures to ensure accuracy of furnished information. That is false.

***a. ChexSystems conducts a robust furnisher credentialing process.***

Before ChexSystems will accept data from a furnisher, it puts the furnisher through a robust credentialing process. Jones Decl. ¶ 8; Chex007241-50, **Ex. 1-A**; Husaby Decl. ¶ 4, **Ex. 3**; Chex007241-50[2], **Ex. 3-A** (credentialing form). As part of credentialing, furnishers must contractually agree to ChexSystems' data contribution policies. Jones Decl. ¶ 11; Chex000100-

[2] Documents produced by ChexSystems are bates labeled with a prefix "Chex_Riddick," which has been abbreviated to "Chex" in this brief. Documents produced by Plaintiff are bates labeled with a prefix of "Riddick_Plaintiff," which has been abbreviated to "Riddick."

107, ¶ 13(A), **Ex.1-B** ("Client represents and warrants that it will comply with the Data Contribution Policy…"). Abiding by these policies is not optional. It is a contractual requirement.

***b. The data contribution policies require furnishers to accurately report accounts.***

These data contribution policies require furnishers to accurately report closed accounts. Jones Decl. ¶ 13; Chex000283-290, at -296, **Ex. 1-C**; Husaby Decl. ¶ 7; Chex000286, **Ex. 3-B** (requiring furnishers to "[e]nsure all information is accurate, complete, and reported in a timely manner"). ChexSystems' policy also requires furnishers to update closure information they previously reported to ensure it is accurate. *See, e.g.*, Jones Decl. ¶¶ 27, 35; Chex007257, **Ex. 1-I** (requiring furnishers "to confirm that your institution has policies and procedures in place that includes timely and accurate submission *and update* of forcibly closed demand deposit account (DDA) information (in accordance with the ChexSystems Data Contribution Policy and Standard)") (emphasis added). ChexSystems' data contribution policy is consistent with the industry standard for accuracy for similar consumer reporting agencies. Kuehn Rep. 16-17.

***c. ChexSystems has data contribution policies specific to bankruptcy.***

ChexSystems also has data contribution policies specific to bankruptcy. Bruce Decl. ¶ 13; Husaby Decl. ¶ 8. ChexSystems prohibits furnishers from reporting debts that have been discharged in bankruptcy. Jones Decl. ¶ 16; Chex000201-282, at -208, **Ex. 1-D** (informing furnishers "Do Not Report the Following …. Accounts already included in a bankruptcy disposition"); Bruce Decl. ¶ 13; Chex007508-7589, **Ex. 2-C**; Husaby Decl. ¶ 9; Chex000201, at -208, **Ex. 3-C** (same). And if a furnisher reported a debt that has since been discharged, the furnisher *must* tell ChexSystems to delete it. Jones Decl. ¶ 17; Chex000435-500, at -441, **Exs. 1-E** & **3-D** (requiring a furnisher to delete account "initially reported and subsequently included in a bankruptcy disposition"); Bruce Decl. ¶ 14; Husaby Decl. ¶ 10.

This is not just a policy in name. ChexSystems mandates furnishers adhere to their duty to accurately report and update accounts impacted by bankruptcy. The *evidence confirms* they do. On this point, it is interesting to contrast the statements in Plaintiff's Motion with the *actual evidence*, which Plaintiff constantly ignores when it challenges her narrative.

- **Plaintiff's Motion** states that ChexSystems makes "no effort to proactively update or correct its reports after a consumer's Chapter 7 bankruptcy discharge." Mot. 4. Plaintiff then cites to deposition testimony that says no such thing. *Id.*

******in contrast******

- **The *evidence*** shows that furnishers regularly notify ChexSystems when an account is impacted by bankruptcy. ***ChexSystems produced evidence showing that furnishers proactively asked ChexSystems to delete accounts that had been discharged over*** [redacted] ***times in five years***. Jones Decl. ¶ 19; Chex0006969, **Exs. 1-F** & **1-G**; Husaby Decl. ¶ 11, Chex0006969, **Ex. 3-E.** ChexSystems also promptly investigates and deletes a closure from a consumer's ChexSystems' file when it receives notification from a source other than a furnisher—such as the consumer, an attorney, bankruptcy trustee, etc.—that a specific account was discharged in bankruptcy. Bruce Decl. ¶ 15; Husaby Decl. ¶ 13. ChexSystems updates [redacted] per month based on bankruptcy notifications. Husaby Dep. 100:8-21, **Ex. 22**.

***d. ChexSystems actively monitors its furnishers.***

ChexSystems also actively monitors furnishers through Key Risk Indicators ("KRIs") to ensure they implement procedures to comply with the FCRA and data contribution requirements. Jones Decl. ¶ 21. ChexSystems monitors furnishers monthly using multiple metrics, including analyzing the furnisher's data contribution patterns and dispute responses. *Id.* at ¶¶ 22-25.

With respect to data contribution, every month, ChexSystems reviews metrics on each

furnisher, including measures for the total closures the furnisher is reporting, the rate of closures the furnisher is reporting, the rate at which the furnisher is updating reporting for settlement, and the rate at which furnishers are deleting reporting. *Id.* at ¶ 23. These metrics are designed to identify whether a furnisher is experiencing any data abnormalities. *Id.* at ¶ 24. Even though these metrics are not named "bankruptcy," they are designed to uncover various issues in reporting, which could include issues related to bankruptcy reporting. *Id.* at ¶ 21-24, 29.

With respect to dispute monitoring, every month, ChexSystems reviews metrics on each furnisher, including measures of the rate at which consumers dispute the furnisher's reporting, the rate at which furnishers correct reported information based on a dispute, the rate at which furnishers verify the accuracy of reported information in response to a dispute; and the rate at which furnishers delete reporting based on a dispute. *Id.* at ¶ 26.

These audits have teeth. If a furnisher triggers a metric, ChexSystems contacts the furnisher to assess the root cause and remediate the issue, if necessary. *Id.* at ¶ 27. ChexSystems requires the furnisher to detail its policies for reporting closures and investigating disputes, which ChexSystems will evaluate to ensure they are adequate. *Id.* at ¶¶ 28, 30; Chex007203-13, **Ex. 1-H** (showing example of this correspondence [redacted]. ChexSystems specifically requires furnishers to maintain procedures to correct and update information, including procedures to update closures when the furnisher becomes aware of bankruptcy. Jones Decl. ¶ 34. ChexSystems may also require furnishers to re-train personnel, if necessary. *Id.* at ¶ 35; Chex007257, **Ex. 1-I.**

ChexSystems will also suspend a furnisher's ability to submit closures if it does not pass furnisher monitoring or if it exceeds the same KRI three times in a six-month period, without explanation. Jones Decl. ¶ 36. ChexSystems may also delete closures from furnishers who fail to respond to ChexSystems suspending their ability to contribute data. *Id.* at ¶ 37; Whyte Decl. ¶ 15.

If needed, ChexSystems will ultimately terminate a furnisher's ability to contribute data. Jones Decl. ¶¶ 38-39; Whyte Decl. ¶ 16; Chex007423, **Exs. 1-J** & **4-A**. ChexSystems has terminated or suspended [redacted] furnishers since 2022 through this audit program. Jones Decl. ¶ 39; Whyte Decl. ¶ 16; Chex007423, **Exs. 1-J** & **4-A**.

**3. Plaintiff's theory of systematic inaccuracy has no evidentiary support.**

Despite ChexSystems' robust accuracy procedures, Plaintiff advances the theory that ChexSystems' "approach has created a systemic problem" of reporting closures discharged in bankruptcy. *See* 2d Am. Compl. ¶ 33; Mot. 3. The actual evidence shows no such thing.

The only evidence Plaintiff advances of supposed systemic inaccuracy is the analysis of her purported expert, Mr. Jaffe, of a sample of [redacted] reports that included unpaid closures. But the sample shows the opposite of what Plaintiff hoped. Mot. 8-9. Mr. Jaffe identified only [redacted] instances out of a sample of [redacted] reports where a ChexSystems report included an unpaid closure that *could* have been discharged. Mot. 9; Jaffe Rep. ¶ 27, Dkt. No. 101. Mr. Jaffe then extrapolates that this could equate to [redacted] reports a year. Jaffe Rep. ¶ 27. ChexSystems prepared [redacted] reports in 2024, *see* Supp. Interrog. Ans. 10, **Ex. 10**, meaning Mr. Jaffe's proposed error rate is [redacted]% of all reports. Stated differently, per Mr. Jaffe's analysis, ChexSystems' ***accuracy rate*** is [redacted]***%*** with respect to accounts potentially discharged. Jaffe Rep. ¶ 27.[3]

But the ***accuracy*** rate is actually even higher than Mr. Jaffe posits because his analysis ignored many exceptions to discharge. Mr. Jaffe only assessed whether an unpaid closure that pre-dated a discharge appeared on a ChexSystems report. Jaffe Rep. ¶ 22; Jaffe Dep. 54:21-55:8, **Ex. 20**. If so, Mr. Jaffe assumed the account was discharged. Mot. 9. But that ignores *bankruptcy law*

---

[3] Even if the Court were to only look at reports with an unpaid closure, the accuracy rate remains [redacted]%. But it makes no sense to focus on that number because it does not consider all reports.

and discharge requirements. Many of the closures Mr. Jaffe highlighted are likely not discharged.

- Mr. Jaffe focused on whether the closure occurred before a discharge order. Jaffe Rep. ¶ 22; Jaffe Dep. 54:21-55:8. But that is the wrong date. The debt must arise before the bankruptcy *filing*, not discharge, meaning Mr. Jaffe likely overcounted. Jaffe Rep. ¶ 27.
- Mr. Jaffe did not consider whether the bankruptcy was an asset or no-asset bankruptcy or whether the debt was scheduled. Jaffe Rep. ¶ 22; Jaffe Dep. 102:11-15, 110:2-3. In asset bankruptcies, a pre-filing debt is not discharged if the consumer did not schedule it in the bankruptcy filing. *In re Parks*, No. 93-30327-S, 1996 WL 33676728, at *3 (Bankr. E.D. Va. Feb. 15, 1996). Nearly [redacted]% of the records Mr. Jaffe highlights were asset bankruptcies, including ones where the consumer's debt does not appear in the schedules. Kalat Rep. ¶ 14, **Ex. 8**.
- A debt arising from fraud may be excepted from discharge. Schaffer Rep. 11, **Ex. 9;** Cox Dep. 91:7-10, **Ex. 21.** Mr. Jaffe counted multiple closures that had been reported by the furnisher for suspected fraud. Kalat Rep. ¶¶ 69-74.
- Debts can be excepted from discharge if they are reaffirmed or subject to an adversary proceeding. Schaffer Rep. 11. Mr. Jaffe's analysis does not assess this element at all. Jaffe Rep. ¶ 22; Kalat Rep. ¶ 8; Jaffe Dep. 102:11-15.

**4. Plaintiff's proposed "scrub" is neither streamlined nor fit to the class.**

To remedy Plaintiff's *invented* systematic inaccuracy, she claims ChexSystems must "scrub" unpaid closures against PACER or a third-party to determine if the account is discharged. Mot. 5. This is far from as streamlined as Plaintiff suggests. Nor is it fit to the class definition.

First, Plaintiff suggests that Mr. Jaffe "demonstrated the feasibility of this identification" of the purported class. Mot. 9. Not true. Mr. Jaffe only looked at whether an account closure pre-

dated a bankruptcy discharge. Jaffe Rep. ¶ 22; Jaffe Dep. 54:21-55:8. He did not examine whether an account is *actually discharged* because he ignored multiple issues that go into determining discharge. *See supra* Part II.A.3; *infra* Part V.B.1.b & Part V.C.1. Nor did his analysis track the class definition, which requires an individualized review of whether the account was re-affirmed or the subject of an adversary proceeding. Mot. 8; Cox Dep. 80:19-90:25 (manual review required).

Second, there is no evidence *any* PACER or third-party data "scrub" confirms whether a consumer's specific account has been discharged in bankruptcy. The "scrubs" Plaintiff describes may show whether a consumer filed for bankruptcy or received a discharge, but not whether the *specific account* at issue was discharged. *See, e.g.*, Kalat Rep. ¶ 47.

Third, Plaintiff's expert, Mr. Cox, confirmed that determining whether an account is discharged requires a manual review of a bankruptcy case file. In his report, Mr. Cox identified six manual steps a lawyer would take to assess discharge: (1) locate the bankruptcy case; (2) note key dates; (3) identify a discharge order; (4) check for conversion or special circumstances; (5) search for adversary proceedings and non-dischargeability orders; and (6) search for re-affirmation agreements. Cox Rep. 10-11, Dkt. No. 97-6. Indeed, in his deposition, Mr. Cox confirmed that assessing whether a debt has been discharged in bankruptcy actually requires at least twelve (12) manual review steps. Cox Dep. 80:19-90:25. This is consistent with the opinion of ChexSystems' expert, Professor Eric Schaffer, who confirmed that assessing whether an account is discharged requires a review of the docket and underlying account information. Schaffer Rep. 14.

Fourth, Plaintiff ignores the strict data limitations that apply to using PACER. Any search must be run at night and the number of inquiries per night cannot exceed several hundred. Kalat Rep. ¶ 55. There is no evidence that ChexSystems could perform the search at the volume Plaintiff's theory requires without violating PACER's data restrictions. Kalat Rep. ¶ 55. Indeed,

Mr. Jaffe's own search violated PACER's rules. Kalat Rep. ¶ 56.

Fifth, Plaintiff's argument that ChexSystems' system already maintains the data to perform this "scrub" is simply wrong. Mot. 5. For its QualiFile reports, ChexSystems obtains several hundred RiskView attributes from LexisNexis related to consumer stability and risk, which include several high-level bankruptcy attributes. Bruce Decl. ¶ 16; Chex007432-77, **Ex. 2-D** (ChexSystems agreement with LexisNexis). These attributes include: (1) total bankruptcy filings; (2) time in months since most recent bankruptcy filing; (3) most recent bankruptcy filing type; (4) status of most recent bankruptcy filing; and (5) number of bankruptcy filings within certain numbers of months. Chex007432, at -53, **Ex. 2-D**. *None* of these attributes identify whether a specific account was discharged. Bruce Decl. ¶ 17. ChexSystems also never ingests the RiskView bankruptcy attributes into its reporting database to use in reports. Bruce Decl. ¶ 18; Edwinson Decl. ¶ 18, **Ex. 5**. That is because, unlike the National Bureaus, ChexSystems never reports information about bankruptcy in a consumer report. Bruce Decl. ¶ 19.[4]

Finally, to the extent Plaintiff argues ChexSystems can use these attributes to make blanket assumptions about discharge, that also does not hold water. In connection with *Plaintiff's own* January 2024 QualiFile report, the RiskView attribute said Plaintiff had most recently filed for bankruptcy seventy-eight (78) months before—which equates to *July 2017*. Edwinson Decl. ¶ 15; Chex007424, **Ex. 5-A**. The RiskView attribute returned the same July 2017 date for Plaintiff's March 2024 QualiFile report. Edwinson Decl. ¶ 16; Chex007424, **Ex. 5-A**. This was *two years before* SunTrust reported her Account closure in July 2019. What assumptions must ChexSystems make to find the Account was discharged by a bankruptcy Plaintiff filed two years earlier?

[4] Plaintiff also suggests that ChexSystems could leverage a product of its parent corporation, FIS, for bankruptcy data. Mot. 5. This product was not account-specific and FIS has not offered this product for years. Whyte Decl. ¶ 21.

## B. The Facts Pertaining to Plaintiff

The "facts" regarding Plaintiff in the Motion come from *allegations* in the Complaint—no sworn *evidence* at all. Mot. 8. The *actual facts* are very different than the *allegations*.

### 1. July 24, 2017 - Plaintiff Files Chapter 13 Bankruptcy

Plaintiff filed her third bankruptcy on July 24, 2017. *See* Pl. Dep. 78:18-24, **Ex. 12**. In her bankruptcy petition, Plaintiff listed a SunTrust account without an account number, Pl. Dep. 82:1-83:4, and identified the Account as "exempt" from her bankruptcy, Pl. Dep. 83:15-84:2.

### 2. June 17, 2019 - Plaintiff Converts Her Chapter 13 Bankruptcy to Chapter 7

Plaintiff converted her Chapter 13 bankruptcy to Chapter 7 on ***June 17, 2019***, *see* Pl. Dep. 84:16-20; Chex007324, **Ex. 17**. After conversion, Plaintiff filed a certification regarding unpaid debts she incurred since commencing her bankruptcy ("Certification"), *see* Riddick000010-11, **Ex. 16**; Pl. Dep. 89:23-90:13. In the Certification, Plaintiff listed an "[o]ver-drawn account" with SunTrust in the amount of $[redacted], but did not include an account number. Pl. Dep. 90:3-91:12; Riddick000010-11, **Ex. 16**. The amount pertaining to SunTrust in her Certification did not match the amount SunTrust reported to ChexSystems. Pl. Dep. 91:10-92:5. Plaintiff again identified her SunTrust account as exempt. Pl. Dep. 92:6-93:17; Chex007326-46, **Ex. 18**.

### 3. July 2019 - SunTrust Closes, Charges Off, and Reports Plaintiff's Account.

SunTrust closed Plaintiff's Account on July 12, 2019, Pl. Dep. 68:6-8, and charged it off with a negative balance of $[redacted]. Pl. Dep. 69:18-25; Pl. Interrog. Ans. 3, **Ex. 11**. On July 12, 2019, SunTrust reported the Account to ChexSystems as closed and unpaid, with SunTrust listing the date of closure as July 12, 2019. Bruce Decl. ¶ 20. The July 12, 2019 date SunTrust reported is the only date in ChexSystems' records related to Plaintiff's Account. Bruce Decl. ¶ 21. Plaintiff acknowledges that July 12, 2019 was *after* she converted her bankruptcy to Chapter 7, and she never provided ChexSystems any other date connected to her Account. Pl. Dep. 118:2-21.

**4. September 26, 2019 - Bankruptcy Discharge**

On September 26, 2019, the bankruptcy court entered a Discharge Order. Riddick000012-15, **Ex. 13**; Pl. Dep. 99:9-23, 102:20-103:3. The Discharge Order does not list the Account, and states "that not all debts are discharged, some debts are not discharged, and because the law is complicated, someone reading the discharge order should consult an attorney … to determine the exact effect of the discharge." Pl. Dep. 101:16-23. Plaintiff found her discharge Order "so complicated that [she] need[ed] an attorney to decipher it for [her.]" Pl. Dep. 103:16-19. Plaintiff does not know if "a reasonable reader of this [discharge] order would understand that [her] SunTrust account was discharged in bankruptcy." Pl. Dep. 103:20-23.

Plaintiff has no recollection of providing any notice of her bankruptcy to SunTrust. Pl. Dep. 75:14-18, 94:18-21. When asked if Plaintiff had "any idea whether SunTrust was aware of [her] 2017 bankruptcy?" she responded, "***No***." Pl. Dep. 96:22-24 (emphasis added). Plaintiff also never provided notice of her bankruptcy discharge to ChexSystems. Pl. Dep. 58:25-59:3.

**5. January 11, 2024 and March 8, 2024 – Chartway Account Application**

There are two QualiFile reports at issue—one ChexSystems provided to Chartway in January 2024 and the other in March 2024. Pl. Dep. 57:9-13. Specifically, Plaintiff applied for a checking account at Chartway once on January 11, 2024 and again on March 8, 2024. Jackson Decl. ¶¶ 6, 17 (Chex008089-93); Jackson Decl. **Exs. 6-A** & **6-C**; Pl. Dep. 106:18-107:13. Each time, Chartway obtained a QualiFile report regarding Plaintiff (the "Reports"). Jackson Decl. ¶¶ 7, 18; Jackson Decl. **Exs. 6-B** & **6-D**. Each Report noted that Plaintiff's Account had been charged off, the Account was closed, and there were "no" collections. Jackson Decl. ¶¶ 8, 19; Jackson Decl. **Exs. 6-B** & **6-D**.

Each Report recommended Chartway "ACCEPT" Plaintiff and "OPEN ACCOUNT" per

Chartway's decisioning strategies. Bruce Decl. ¶ 24; Jackson Decl. **Exs. 6-B** & **6-D**. Contrary to Plaintiff's *allegations*, the Account "did not cause Chartway to decline an account for [Plaintiff]." Jackson Decl. ¶¶ 9, 20. *In fact, Chartway confirmed it never denied Plaintiff an account*. Jackson Decl. ¶¶ 13, 23; Jackson Decl. **Exs. 6-A** & **6-C** (data field for "Denial Reasons" is "False").

Rather, after receiving the "ACCEPT" recommendation, Chartway ordered an Experian FraudShield report on Plaintiff, which showed fraud keywords. Jackson Decl. ¶¶ 10, 21; Jackson Decl. Exs. A & C. As a result, Chartway denoted Plaintiff's applications with a "Fraud" risk "Status" based on Experian's report. Jackson Decl. ¶¶ 10, 21; Jackson Decl. **Exs. 6-A** & **6-C**. Chartway informed Plaintiff that she needed to provide additional documentation to resolve the fraud keyword. Jackson Decl. ¶¶ 11, 22. Chartway has no record of Plaintiff responding. Jackson Decl. ¶¶ 12, 23. As a result, Plaintiff's applications simply expired without Plaintiff providing anything further. *See* Jackson Decl. ¶¶ 12, 15, 26; Jackson Decl. **Exs. 6-A** & **6-C**. Chartway never sent Plaintiff an adverse action notice. Jackson Decl. ¶¶ 14, 25.

Plaintiff offered no admissible evidence that Chartway ever denied her applications.

**6. March and October 2024 - Plaintiff's Correspondence with ChexSystems**

After her Chartway applications, Plaintiff requested multiple consumer file disclosure reports ("CFDR") from ChexSystems. *See* Pl. Dep. 154:9-11. A CFDR shows a consumer the information in her file at ChexSystems. Husaby Decl. ¶ 15. Plaintiff received the first CFDR on March 22, 2024. Pl. Dep. 154:20-155:1; Husaby Decl. ¶ 17; Chex000001-9, **Ex. 3-F**. Plaintiff admits that "as of March 22nd, 2024, [she] knew that SunTrust had reported to ChexSystems an account closure status as unpaid and original charge off amount of 458.66 and a closure status date of July 12th, 2019." Pl. Dep. 156:1-6. Nonetheless, Plaintiff never contacted ChexSystems to dispute her Account. Husaby Decl. ¶ 14; Pl. Dep. 129:2-6, 145:6-9. She just sued.

**7. October 2024 - Plaintiff opens Bank of America account**

Between March and October 2024, Plaintiff did not attempt to open any other bank accounts because she had no need for an account. Pl. Dep. 151:17-152:3. In October 2024, Plaintiff opened a bank account with Bank of America, which remains open today. Pl. Dep. 149:4-150:10.

**C. There is no evidence that any specific furnisher, let alone SunTrust, is unreliable.**

Plaintiff argues that ChexSystems cannot rely on furnishers to accurately report—or update—accounts because *all* furnishers are categorically unreliable. Plaintiff has not offered a scintilla of evidence that *any furnisher* is unreliable, let alone *all furnishers*. She certainly has not offered any evidence ChexSystems knew her furnisher, SunTrust, was supposedly unreliable.

There is no evidence in the record that SunTrust is unreliable with respect to reporting discharged accounts. The evidence shows the opposite. To ChexSystems' knowledge, SunTrust is well-regarded within the financial services industry. Whyte Decl. ¶ 18; Jones Decl. ¶¶ 40-43; Husaby Dec. ¶ 21. SunTrust must adhere to ChexSystems' data contribution policies, regularly furnishes closure information to ChexSystems, and regularly updates closure information it previously furnished. Jones Decl. ¶ 43; Chex000100, 105–106, **Ex. 1-B**; Husaby Decl. ¶¶ 10, 20, 23; Chex006969, **Ex. 3-G**; Truist0007215-26, at 17, **Ex. 14**. Plaintiff herself believed SunTrust "was a reliable financial institution" with a "good reputation." Pl. Dep. 66:5-18.

ChexSystems also monitors SunTrust as part of its furnisher monitoring program. Jones Decl. ¶ 41. This included ChexSystems confirming that SunTrust maintains rigorous policies designed to ensure it accurately reports accounts to ChexSystems and corrects inaccuracies, if any. Jones Decl. ¶¶ 40-43; *see also* Truist0017340–46, **Ex. 15** (dispute policy for disputes received via ChexSystems). These policies include procedures to delete consumer accounts discharged through bankruptcy upon notice. Jones Decl. ¶ 42. And ChexSystems' records demonstrate that SunTrust

complies. Between September 2020 and September 2025, SunTrust deleted [redacted] reported closures that had since been discharged in bankruptcy. Jones Decl. ¶ 43; Chex006969, **Ex. 1-G** (showing furnisher deletion requests related to Truist and SunTrust). Moreover, ***Mr. Jaffe did not identify a single closure in his representative sample where ChexSystems reported a SunTrust closure after it had been discharged.*** Kalat Rep. ¶ 61. Mr. Jaffe's supposedly representative sample of allegedly inaccurate reports did not include a single example from SunTrust.

Nor is there evidence of systematic unreliability for any furnisher. For example, [redacted] and [redacted] deleted [redacted] and [redacted] closures reported to ChexSystems that had since been discharged in bankruptcy, Jones Decl. ¶ 44, and those financial institutions did not have a single closure appear in Mr. Jaffe's representative set of [redacted] closures, Kalat Rep. ¶ 60. In total, ChexSystems receives closure reporting from approximately [redacted] financial institutions, Whyte Decl. ¶ 6, yet Plaintiff has done nothing to show each furnisher is presumptively unreliable.

## III. PROCEDURAL BACKGROUND

Plaintiff asserts one count against ChexSystems under the FCRA, 15 U.S.C. § 1681e(b). Compl. ¶¶ 63-72. In her Motion, Plaintiff asks the Court to certify the following "Proposed Class"[5]:

> All natural persons who (1) were the subject of a consumer report furnished by Defendant to a third party within two years before the filing of this action; (2) where the report indicated an outstanding balance or a past due indication on an account existing on the date such person filed a Chapter 7 bankruptcy (whether or not such account was scheduled as a debt) which resulted in the entry of a Discharge Order; and (3) where there is no reaffirmation agreement that makes the account enforceable notwithstanding the discharge and no adversary proceeding in which the account is determined to be non-dischargeable.

2d Am. Compl. ¶ 63; *id.* ¶ 64 (Virginia sub-class).

[5] The Second Amended Complaint identifies the class period as two years. 2d Am. Compl. ¶ 63. The Motion refers to the Second Amended Complaint but identifies a class definition with "five years" instead of "two years." Mot. 8. The Motion later makes clear this is a typo. Mot. 11 (identifying "the full class period" as "two years prior to filing").

## IV. LEGAL STANDARD

Plaintiff must prove her proposed class meets the elements of numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Because Plaintiff seeks to certify a class under Rule 23(b)(3), 2d Am. Compl. ¶ 69, she also must demonstrate that common issues predominate over individual ones, and that a class action is the superior method of adjudication. Fed. R. Civ. P. 23(b). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Dukes*, 564 U.S. at 350–51 (citation omitted). "[T]hat 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim...'" *Id.* at 351 (citations omitted).

Plaintiff must affirmatively prove—not merely plead—all elements of class certification. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014). The Rule 23 inquiry requires Plaintiff to show "'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Freeman v. Progressive Direct Ins. Co.*, 149 F.4th 461, 466 (4th Cir. 2025) (citation omitted, alteration in original).

## V. ARGUMENT

### A. Plaintiff is atypical of the Proposed Class and inadequate as a class representative.

Could Plaintiff take the witness stand and represent the interests of absent class members? This is a weighty question because representing *absent* individuals deprives these individuals of the opportunity to have their *own* day in court. The answer is "No."

Plaintiff must show she is an "appropriate representative[] of the class whose claims [she] wish[es] to litigate." *Dukes*, 564 U.S. at 349; Fed. R. Civ. P. 23(a)(3). Typicality and adequacy often "merge" as the Court assesses if the plaintiff's "claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (citation omitted). "[A] court must compare 'the plaintiffs' claims or defenses with those of the absent class members,'" which "will necessarily entail '[1] a review of the elements of plaintiffs' *prima facie* case[;] ... [2] the facts on which the plaintiff[s] would necessarily rely to prove [those elements,]' … and (3) a determination of to what extent 'those facts would also prove the claims of the absent class members.'" *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013) (citation omitted).

Plaintiff's Motion gets the analysis thoroughly wrong when she asserts that her "claim is identical in all material respects to those of other class members." Mot. 17. It is not even close.

**1. Plaintiff is not adequate because she is not a member of the Proposed Class.**

Plaintiff is not a member of the class she seeks to certify. This is disqualifying, full stop.

Plaintiff "must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem*, 521 U.S. at 625–26 (citation omitted); *Abron v. Black & Decker (U.S.) Inc.*, 654 F.2d 951, 954 n.11 (4th Cir. 1981) ("[T]he representative plaintiff must be a member of the class she wishes to represent.") (citation omitted). ***The Court cannot certify a class if the named plaintiff is not a class member*****.** *Rosedale v. CarChex, LLC*, No. CV SAG-19-2780, 2020 WL 6801922, at *4 (D. Md. Nov. 19, 2020) ("[T]he Maryland class cannot be certified with a single representative … who is not a member of the class.”**)**; *Muhammad v. PNC Bank, N.A.*, No. 2:15-CV-16190, 2016 WL 5843477, at *2 (S.D.W. Va. Oct. 4, 2016) (holding the named plaintiff must be a member of the purported class) (Goodwin, J.).

Plaintiff defines the purported class as individuals who were the subject of a QualiFile report "where the *report indicated* an outstanding balance or a past due indication on an account *existing on the date such person filed a Chapter 7 bankruptcy* which resulted in the entry of a Discharge Order." Mot. 18 (emphasis added). That is unequivocally *not* Plaintiff.

Plaintiff's Reports did ***not*** show that her Account had an unpaid balance that existed prior to the date Plaintiff filed for Chapter 7. Plaintiff "filed a Chapter 7 bankruptcy" on **June 17, 2019**.[6] Both Reports reflected that SunTrust reported to ChexSystems that it closed the Account on **July 12, 2019**. That date is nearly a month *after* Plaintiff's bankruptcy filing. *See* Pl. Dep. 118:2-21. The law is clear that, "[i]n general, debts arising after the filing of a bankruptcy petition are not dischargeable under § 1328(a) of the Bankruptcy Code." *Heffner v. Elmore, Throop & Young, P.C.*, No. CIV. PJM 11-3369, 2012 WL 2138097, at *3 (D. Md. June 12, 2012), *aff'd*, 513 F. App'x 293 (4th Cir. 2013) (citation omitted); *In re Rosenfeld*, 23 F.3d 833, 836 (4th Cir. 1994) ("A discharge in bankruptcy relieves the debtor of personal liability for all pre-petition debts but those excepted under the Bankruptcy Code."). Plaintiff's expert, Mr. Cox, agrees. Cox Rep. ¶ 7 (noting only pre-petition debts can be discharged). The July 12, 2019 closure date was the only date in ChexSystems' records related to Plaintiff's Account. Bruce Decl. ¶ 21.

Although Plaintiff ignores this issue entirely in her Motion, she previewed her response in her motion to amend briefing. Dkt. No. 107, at 12-13. There, she claims it does not matter that ChexSystems' records reflect the Account being closed and charged off post-bankruptcy because ChexSystems should just assume (despite its records) that the debt was incurred pre-bankruptcy. *Id.* This is a disqualifying rationale. It throws out all pretenses of measuring the purported class based on objective data and injects a brand new assumption based on no data whatsoever—for Plaintiff only—in an effort to salvage her claim. This is the very definition of atypicality.

Plaintiff is simply not someone whose report indicated an outstanding balance on an account at the time of a Chapter 7 bankruptcy petition. The only date connected to the Account on

[6] In cases converted from Chapter 13 to Chapter 7, the conversion date is the bankruptcy "petition" date. *In re Jahanian*, No. 08-10030-SSM, 2011 WL 710477, at *1 (Bankr. E.D. Va. Feb. 22, 2011).

the Reports was *after* her Chapter 7 filing. The Court cannot certify a class where the plaintiff is not a member. *See, e.g.*, *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 260 (4th Cir. 2005) ("The district court cannot certify a class action in which the class representative is not part of the class and does not 'possess the same interest and suffer the same injury' as the class members.") (citation omitted); *Smyth v. Carter*, 168 F.R.D. 28, 33 (W.D. Va. 1996).

**2. Plaintiff's proposed "scrub" would make absolutely no difference to her.**

Plaintiff describes the "core" legal issue as whether ChexSystems should have applied an "update policy" to scrub all closures in its system for bankruptcy discharges. Mot. 15. Plaintiff describes this scrub as requiring ChexSystems to cross-reference the date of the debt in its system with PACER or another third party. Mot. 5. Plaintiff is atypical because the proposed scrub would have made no difference to her. She cannot represent a class when the practice she claims was unreasonable—not scrubbing—is immaterial to her claim.

As discussed above, ChexSystems' records pertaining to the Account only reflect a closure date of July 12, 2019—a month before her Chapter 7 filing. *See* Chex007324, **Ex. 17**; Pl. Dep. 84:16-20. Because only pre-*filing* debts are subject to discharge, Plaintiff's scrub would not have flagged her debt as discharged. The same is true if ChexSystems had scrubbed using the RiskView attributes from LexisNexis. LexisNexis reported that Plaintiff's most recent bankruptcy filing was July 2017—*two years* before Plaintiff's Account closure. *See* Chex007424, **Ex. 5-A**. Indeed, Plaintiff's bankruptcy expert, Mr. Cox, was forced to admit in his deposition:

> **Q:** But [ChexSystems] wouldn't be able to definitively say that the debt was discharged based on those two dates, correct.
>
> **A:** With those two dates, ***they would not be able to definitively say***.

Cox Dep. 106:13-17 (emphasis added).

Plaintiff has no claim under § 1681e(b) if the procedure she claims ChexSystems must

follow would have made no difference to the reporting to Chartway. *See, e.g.*, *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018) (noting, in the context of 1681i, even if the defendant's investigation was unreasonable, plaintiff's FCRA claim would fail because she could not show "that had the furnisher conducted a reasonable investigation, the result would have been different"); *Perez v. Medicredit*, No. SACV18-2283JVS(JDEx), 2019 WL 3063514 at *3 (C.D. Cal. March 14, 2019) ("[A]lleging Defendant's investigation was unreasonable solely because the investigation failed to remedy the error, is not sufficient.") (citation and quotation omitted). She is not typical if the procedures she claims ChexSystems lacked would make no difference to her.

**3. Plaintiff's bankruptcy does not "objectively show" her debt was discharged.**

Plaintiff describes this case as over whether ChexSystems "should be relying on what a furnisher says…when official court documents…objectively show" "the unpaid balance preceded the consumer's Chapter 7 bankruptcy filing." Mot. 20. Thus, a major component of her theory is that each class member's bankruptcy filing must "objectively show" the debt at issue preceded the filing, before being discharged. That does not describe Plaintiff's bankruptcy. She is atypical.

The dates of Plaintiff's closure and her bankruptcy would never have indicated that the debt was included in bankruptcy. Nor would a manual pre-report investigation of her bankruptcy filings. Multiple details about the Account did not match between the Reports and Plaintiff's bankruptcy filing. Neither Plaintiff's initial bankruptcy petition, nor her conversion documentation, listed an account number for the listed SunTrust account. Pl. Dep. 82:1-83:4; Pl. Dep. 91:6-92:5.[7] And, in her conversion, Plaintiff identified an unpaid debt to SunTrust as $[redacted],

[7] Plaintiff may cite cases analyzing "no asset" bankruptcies, but she did not limit her class to "no asset" bankruptcies and has not identified any evidence showing a way to mechanically distinguish between "asset" and "no asset" bankruptcies through a third party source, so any cite to "no asset" bankruptcy caselaw should be rejected as inapplicable. *In re Parks*, 1996 WL 33676728, at *3 (Bankr. E.D. Va. Feb. 15, 1996) (debts must be scheduled in asset bankruptcies to be discharged).

which she admits is a different amount than what SunTrust reported to ChexSystems. Pl. Dep. 91:6-92:5. To complicate matters, Plaintiff also represented the listed account (or at least the assets within it) was "exempt" from her bankruptcy. Pl. Dep. 83:15-84:2, 92:6-93:17; Chex007326, at 30, **Ex. 18**. Absent an objection, "[p]roperty a debtor claims as exempt will be excluded from the bankruptcy estate…." *Schwab v. Reilly*, 560 U.S. 770, 774 (2010).

Unsurprisingly, Plaintiff admitted her bankruptcy was "so complicated" that *she* needed an attorney to "decipher it," and she did not know if a "reasonable reader of this order would understand that [her] SunTrust account was discharged in bankruptcy." Pl. Dep. 103:16-25. Plaintiff's own bankruptcy filing clearly does not meet the requirement she imposed—that the "official court documents … objectively show" that "the unpaid balance preceded the consumer's Chapter 7 bankruptcy filing." Mot. 20. She is not typical of the purported class. *See Rose v. PrimeCare Med., Inc.*, No. 5:22-CV-00405, 2025 WL 1417168, at *12 (S.D.W. Va. May 15, 2025) (denying certification because the named plaintiffs varied in their own claims and the factual issues of the class members varied greatly).

**4. There is no evidence that SunTrust is a systematically unreliable furnisher.**

A central premise of Plaintiff's claim is that it is *never* reasonable for ChexSystems to rely on furnishers to accurately report accounts that are discharged in bankruptcy. Contrary to Plaintiff's theory, FCRA case law firmly establishes that CRAs have no duty to conduct a pre-report investigation unless the information they are reporting is facially inaccurate or comes from a source the CRA knows is unreliable. *See Wright v. Experian Info. Solutions, Inc.*, 805 F.3d 1232, 1239-40 (10th Cir. 2015); *Jianqing Wu v. Trans Union, LLC*, No. 03-1290, 2006 U.S. Dist. LEXIS 96712, at *19-23 (D. Md. May 2, 2006), *aff'd*, 219 F. App'x 320 (4th Cir. 2007).

Because there is no evidence the information in the Reports was inaccurate on its face (the

face of the data alone did not indicate it was supposedly inaccurate), Plaintiff must show that SunTrust was unreliable. She must do so before ever discussing whether ChexSystems should have employed a pre-report investigation procedure. Plaintiff has no evidence that SunTrust is unreliable. *See generally* Mot. The only *evidence* shows the opposite.

- To ChexSystems' knowledge, SunTrust is a reliable furnisher. Whyte Decl. ¶ 18; Jones Decl. ¶¶ 40-43; Husaby Decl. ¶ 21.
- SunTrust is contractually bound to follow ChexSystems' data contribution procedures.
- ChexSystems' data contribution policy requires SunTrust to delete consumer accounts discharged through bankruptcy.
- ChexSystems requires SunTrust to maintain procedures to accurately report.
- ChexSystems actively monitors SunTrust through its KRI process.
- SunTrust deleted [redacted] closures reported to ChexSystems due to bankruptcy.
- There is not a single closure from SunTrust in Mr. Jaffe's representative sample of [redacted] closures supposedly erroneously reported after a bankruptcy discharge.

Plaintiff must have *evidence* to show SunTrust is an unreliable furnisher. But she has none. How can Plaintiff be typical of claims involving supposedly universally unreliable furnishers when there is ample evidence that *her furnisher* is reliable? She cannot.

**5. Plaintiff lacks standing, which prohibits her from representing others.**

Plaintiff has not suffered any concrete harm. This also makes her atypical.

Constitutional standing requires Plaintiff to demonstrate she suffered an injury-in-fact traceable to ChexSystems' wrongdoing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (citations omitted). Plaintiff's injury-in-fact must be "concrete"—it must "actually exist." *Id.* at 340. Showing an injury-in-fact "requires a concrete injury even in the context of a statutory

violation." *Id.* at 341. A "bare procedural violation" is not sufficient. *Id.* at 342.

Plaintiff has no admissible[8] evidence that *she* suffered *any* harm caused specifically by ChexSystems' allegedly inaccurate reporting. Both Reports recommended Chartway "ACCEPT" Plaintiff and "OPEN ACCOUNT." Jackson Decl. Exs. **6-B** & **6-D**. Chartway never denied Plaintiff an account, let alone denied her an account based on the Reports. Jackson Decl. ¶¶ 13, 23-24. The only admissible evidence on this point is that Plaintiff's Account did not impact her Chartway application at all. Jackson Decl. ¶¶ 9, 20. Plaintiff's actions confirm this fact. She obtained a CFDR from ChexSystems shortly after her second account application, identified the allegedly inaccurate information, *but never contacted ChexSystems*. Pl. Dep. 129:2-6, 145:6-9, 156:1-10.

The Motion contains no *actual evidence* of harm. It simply cites Plaintiff's *allegations* in the Complaint. Mot. 6-7. This is not sufficient. "On a class certification motion, the plaintiff must show standing 'through evidentiary proof.'" *Prado v. Wal-Mart Stores, Inc.*, No. CV 17-05630 AB (KKX), 2018 WL 11346522, at *3 (C.D. Cal. Dec. 18, 2018) (quoting *Comcast v. Behrend*, 569 U.S. 27, 33 (2013)). Without standing herself, Plaintiff cannot represent a class. *Haney v. USAA Cas. Ins. Co.*, 331 F. App'x 223, 227 (4th Cir. 2009) ("Without Article III standing as a beginning point, Haney cannot claim standing for Rule 23 purposes.").

*****

Plaintiff attempts to simplify typicality to ChexSystems' alleged policy not to "scrub." This is myopic. Plaintiff is an inadequate, atypical representative for multiple reasons. It would be clear error to "conclude[] that [Plaintiff] was typical of the class she seeks to represent because she [i]s

---

[8] Plaintiff may attempt to rebut this argument by submitting her own sworn declaration on Reply. This would be improper for two reasons. First, it is too late. Plaintiff was required to affirmatively come forward with her evidence for class certification. She did not. Second, Plaintiff's own testimony of what Chartway allegedly *said* to her to prove the truth of Chartway's statements would be classic inadmissible hearsay. *See* Fed. R. Evid. 802.

'challenging [ChexSystems'] alleged uniform failure to establish or to follow reasonable procedures.'" *Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260, 265–66 (4th Cir. 2012).

**B. Plaintiff fails to satisfy Rule 23's requirements of commonality and predominance because individualized issues predominate over common issues.**

Plaintiff also fails to show "questions of law or fact common to the class" that "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(a)(2), (b)(3).

Plaintiff must show her claim "depend[s] upon a common contention…of such a nature that it is capable of classwide resolution . . . ." *Dukes*, 564 U.S. at 350. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same ***injury***.'" *Id.* at 349–50 (citation omitted, emphasis added). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance assessment is "stringent," and "far more demanding" than commonality, so commonality is often subsumed into the predominance analysis. *Id.* at 609, 624.

The Court must consider the inefficiencies and practical difficulties of addressing individualized inquiries if a class is certified. *See Boczek v. Pentagon Fed. Credit Union*, No. 1:23-CV-43, 2025 WL 3068570, at *7 (N.D.W. Va. Nov. 3, 2025) (Rule 23 "require[es] courts to consider the likely difficulties in managing a class action") (citation and quotation omitted). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350.

The record demonstrates that the Court must review individualized evidence as to each class member's account closure, bankruptcy disposition, consumer report, applicable furnisher, and resulting injury (if any). Individualized inquiries predominate over any common issues.

**1. Plaintiff cannot demonstrate through common proof that ChexSystems sold actionably inaccurate consumer reports for each Proposed Class member.**

Plaintiff must show that each class members' report was inaccurate. 15 U.S.C. § 1681e(b). This requires showing (1) factual and (2) actionable inaccuracy. *McFadden v. Equifax Info. Servs., LLC*, No. 1:25-cv-1087-MSN-WBP, 2025 WL 3503039, at *4 (E.D. Va. Oct. 27, 2025). Plaintiff cannot show either classwide.

Although courts traditionally described inaccuracy as "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to [have an] adverse[] effect," *see Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (quoting citation omitted, alteration in original), they recently confirmed that inaccuracy must also be "actionable," which means "***objectively and readily verifiable***." *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 252-53 (4th Cir. 2025) (reviewing accuracy requirement under analogous FCRA provision) (emphasis added). Courts also make clear that this requirement extends to reasonable procedures claims under § 1681e(b), not just investigation claims under § 1681i. *See McFadden*, 2025 WL 3503039, at *3 (applying *Roberts* to CRAs and § 1681e(b)); *accord Mader v. Experian Info. Solutions, Inc.*, 56 F.4th 264, 269-71 (2d Cir. 2023) (applying actionable inaccuracy to § 1681e(b)).

The reason for this "objectively and readily verifiable" standard is clear. As the Fourth Circuit explained, "consumer reporting agencies[] are not expected to function like full tribunals" in adjudicating liability for debts. *Roberts*, 131 F.4th at 251 n.6. Having to determine the accuracy of a debt through "complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform is not objectively and readily verifiable." *Id.* at 251. "Requiring investigations that resemble full court proceedings would not be reasonable." *Id.*

Plaintiff must demonstrate by common proof that ChexSystems could "objectively" and "readily" verify that the closures of every single class member were reported inaccurately because,

under Plaintiff's theory, the debts were discharged. Plaintiff does not make this showing.

***a. It is not "objectively" or "readily" verifiable that Plaintiff's bankruptcy discharged her Account.***

As to Plaintiff's own bankruptcy, as discussed above, it was not "objectively" or "readily" verifiable that Plaintiff's Account was discharged. *See supra* Part V.A.3. It requires individualized legal analysis to determine discharge across the purported class. Pl. Dep. 103:16-25.

This is consistent with the Second Circuit's reasoning in *Mader*, 56 F.4th 264, which the Fourth Circuit has adopted. *See Roberts*, 131 F.4th at 251 n.6 (adopting *Mader*'s "logic"). In *Mader*, the Second Circuit considered the reporting of an allegedly discharged debt and found the inaccuracy was not actionable "because it evades objective verification." *Mader*, 56 F.4th at 269. The Second Circuit explained, "[t]here is no bankruptcy order explicitly discharging this debt.… The bespoke attention and legal reasoning required to determine the post-bankruptcy validity of Mader's debt means that its status is not sufficiently objectively verifiable to render Mader's credit report 'inaccurate' under the FCRA." *Id.* at 269-70.

This decision is contrasted by the Fourth Circuit's treatment of an "actionable" inaccuracy (though, without analyzing the issue) when *a furnisher* reported a delinquent balance after the consumer made all Chapter 13 payments, the furnisher received *actual notice* the debt was discharged, the consumer disputed the reporting, and the furnisher investigated but continued to report the delinquency. *Guthrie v. PHH Mortg. Corp.*, 79 F.4th 328, 335, 345 (4th Cir. 2023). Unlike in *Guthrie*, Plaintiff has no *evidence* showing ChexSystems received *actual notice* that her Account debt was discharged, and she admittedly never disputed the reporting with ChexSystems.

Plaintiff has not shown that ChexSystems could have "objectively" or "readily" verified her bankruptcy discharged her Account, let alone conducted the same investigation across the purported class without highly individualized inquiries. Moreover, to the extent Plaintiff argues,

as she did in her motion for leave to amend briefing, Dkt. No. 107, at 12-13, that ChexSystems must not only assume all pre-bankruptcy filing debts are discharged, but that post-bankruptcy accounts actually could be pre-bankruptcy filing debts, there is simply no plausible argument that the proposed class members' debt status is objective or readily verifiable.

***b. Plaintiff cannot avoid the individualized details of bankruptcy by claiming that ChexSystems should just presume accounts are discharged across the class.***

Because *actually* determining discharge requires an individual review of each consumer's circumstances, Plaintiff argues that ChexSystems can perform a third-party bankruptcy "scrub," "match[] account closure dates against bankruptcy discharge dates," Mot. 13, and *just assume* everyone who fits that criteria had the debt discharged, Mot. 9. Plaintiff claims her expert, Mr. Jaffe, already performed this analysis on a data sample, and could replicate it classwide. *Id.* Plaintiff's assumption of discharge ignores the actual facts in the case and significant swaths of bankruptcy law. Determining whether a debt is *actually* discharged requires individualized inquiries that the "scrub" does not capture.

First, as Plaintiff's own expert, Mr. Cox, recognized, to "objectively confirm whether a debt was discharged," a decision-maker needs to review the entire bankruptcy case docket. Cox Rep. 10-11. Mr. Cox breaks this down into 6 unique steps in his report, and 12 steps in his deposition, each requiring their own manual review and judgment calls. Cox Rep. 10-11; Cox Dep. 80:19-90:25. Plaintiff has not shown any way to conduct this individualized review, at scale, across the over approximately [redacted] reports ChexSystems prepares per year to *confirm* purported classwide inaccuracy. Instead, Plaintiff only has speculation of discharge.

Second, Plaintiff's Motion ignores the unique legal inquiries needed to assess if an account is discharged, which makes assessing accuracy hopelessly individualized. As examples only:

- In asset bankruptcies, a debt is not discharged if the consumer did not schedule it in his

or her bankruptcy filing. *In re Parks*, 1996 WL 33676728, at *3; Cox Dep. 85:10-16.

- Regardless of whether the bankruptcy is asset or no asset, a debt arising through fraud may be excepted from discharge. 11 U.S.C. § 523(a)(2); Cox Dep. 91:7-10.
- "[W]hen an unlisted creditor with neither notice nor knowledge of a no-asset bankruptcy case is owed an unscheduled debt, that debt may be discharged only when, among other things, the debtor omitted the debt and creditor inadvertently." *In re Kubin*, No. 18-02853, 2022 WL 1467643, at *4 (Bankr. N.D. Ill. May 9, 2022).
- Debts can be excepted from discharge if they are reaffirmed or subject to an adversary proceeding. 11 U.S.C. § 524(c); *In re Brown*, 659 B.R. 868, 870 (Bankr. D.S.C. 2024) ("Section 524(c) provides that a debtor may enter into an agreement with a claim holder to 'reaffirm' the debtor's personal liability for pre-petition debt that would otherwise be dischargeable if the agreement complies with certain enumerated requirements."); *In re Woolard*, 190 B.R. 70, 77 (Bankr. E.D. Va. 1995) ("[A] proceeding to determine the dischargeability of a debt or to obtain a declaratory judgment relating to the dischargeability of a debt must be brought by an adversary proceeding.").

These issues are not theoretical. They are plentiful in the sample class data.

- Nearly [redacted]% of the records Plaintiff highlights in the sample were asset bankruptcies, including ones that did not schedule the consumer debt at issue. Kalat Rep. ¶ 14.
- Similarly, with respect to fraud, there are [redacted] closures for "suspected fraud" in the [redacted] report sample Mr. Jaffe analyzed, meaning there are [redacted] across the purported class. Kalat Rep. ¶¶ 69-74.
- The sample includes multiple records where the debt at issue was not scheduled and the furnisher did not appear to receive notice of bankruptcy. *See, e.g.*, Kalat Rep. ¶ 40.

Plaintiff ignores these issues, simply assuming all debts that appear in Mr. Jaffe's analysis were discharged. But this is not a presumption designed for accuracy. It is designed to concoct a class *at the expense of precision*. Indeed, due to the "numerous exceptions to discharge," the Eighth Circuit held that a CRA is *not* obligated to preemptively investigate whether a debt is discharged even if the CRA knows of the bankruptcy. *Rydholm*, 44 F.4th at 1109 (citing 11 U.S.C. § 523) ("We join our sister circuits in rejecting the invitation to mandate that CRAs hire individuals with legal training to preemptively determine the validity of reported debts.").

Third, the Court should not take the bait when Plaintiff says that Mr. Jaffe "has already demonstrated the feasibility of this identification" of accounts that have been discharged in bankruptcy. Mot. 9. He did no such thing. Mr. Jaffe *only* looked at discharge dates compared to closure dates. He did not consider *any* of the individualized issues necessary to determine actual discharge. Mr. Jaffe's analysis did not even track Plaintiff's proposed class definition because he did not conduct a review of re-affirmations or adversary proceedings, Kalat Rep. ¶ 8, which are specific elements of Plaintiff's purported class.

*****

Plaintiff has not demonstrated she could show via common proof that ChexSystems sold an inaccurate report for each class member because each closure-related debt was actually discharged in bankruptcy. *See McFadden*, 2025 WL 3503039, at *4 (dismissing FCRA claims because "[t]he issues clearly require 'complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform' which is beyond the responsibility of Defendant"). Assessing accuracy requires an individualized, fact-dependent inquiry, which precludes class certification.[9]

---

[9] *See, e.g.*, *Wilson v. First Advantage Background Servs. Corp.*, No. 21-CV-06071-SRB, 2023 WL 5667905, at *4 (W.D. Mo. July 18, 2023) (whether a consumer report is "misleading or inaccurate

**2. Individualized issues of standing and causation preclude Plaintiff from prosecuting this matter on behalf of the Proposed Class.**

Plaintiff also fails to show how she could prove by common, admissible evidence that the Proposed Class members suffered an injury-in-fact caused by ChexSystems' alleged wrongdoing.

Plaintiff first asserts that "all class members were injured by the same pattern of inaccurate reporting," which Plaintiff identified as "loss of banking opportunities" and "reputational harm." Mot. 16. But Plaintiff does not have any admissible evidence showing that any class member suffered these injuries. *See* Hendricks Dep. 160:11-161:17, **Ex. 19** (Plaintiff's expert admitting he had not seen any evidence that any consumer was denied an account or forced to get a different account due to a ChexSystems' report); *id.* 61:16-20 (Plaintiff's expert admitting he did not look at a single consumer's report, or bankruptcy or account application). Later, perhaps recognizing the weakness of her classwide damages statement, Plaintiff stated that "because Plaintiff is not seeking actual damages for each class member, there is no need for individualized inquiries into each consumer's consequential harm or emotional distress." Mot. 25. This argument likewise fails because Plaintiff must prove injury to every class member to satisfy constitutional standing.

In class litigation, "[e]very class member must have Article III standing in order to recover

---

depends on individual context, including ... how the company receiving the score reasonably interpreted it"); *Jones v. Realpage, Inc.*, No. 3:19-CV-2087-B, 2021 WL 852218, at *6 (N.D. Tex. Jan. 27, 2021) (denying certification on a Section 1681e claim because "individualized issues will predominate with respect to determining whether each putative class member's consumer report was inaccurate"); *Owner-Operator Indep. Drivers Ass'n, Inc v. USIS Com. Servs., Inc.*, 537 F.3d 1184, 1194 (10th Cir. 2008) (affirming denial of class certification where determining accuracy of class members' employment history records required an individualized inquiry); *Farmer v. Phillips Agency, Inc.*, 285 F.R.D. 688, 703 (N.D. Ga. 2012) (denying certification because accuracy would "entail an individual inquiry into the contents of each consumer report issued by defendant"); *Gomez v. Kroll Factual Data*, 2014 WL 1456530, at *4 (D. Colo. Apr. 14, 2014) ("The individualized nature of an FCRA claim . . . has led most courts to deny class certification in these types of cases."); *Harper v. TransUnion, LLC*, 2006 WL 3762035, *9 (E.D. Pa. Dec. 20, 2006) (denying certification where defendants "challeng[ed] plaintiff's assertion that defendants issued inaccurate credit reports to the individual class members").

individual damages." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Plaintiff must show each purported class member suffered an injury-in-fact caused by ChexSystems' actions. *See id.* at 442; *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2020 WL 5778756, at *17 (E.D. Va. Aug. 14, 2020), *R&R adopted*, No. 2:18MD2836, 2021 WL 3704727 (E.D. Va. Aug. 20, 2021) ("At class certification, EPPs must be able to demonstrate that all or substantially all members of the putative class suffered some injury fairly traceable to the conduct of the defendants."). The Supreme Court's decision "clearly requires … a *factual* showing for each class member to claim damages," which requires Plaintiff "to 'set forth' 'specific facts,' 'supported adequately by the evidence,' to show each class member's standing to recover damages." *Alig v. Rocket Mortg., LLC*, 126 F.4th 965, 975 (4th Cir. 2025) (quoting *Ramirez*, 594 U.S. at 431) (emphasis in original) (reversing class certification).

***a. Plaintiff has no evidence of classwide loss of banking opportunities.***

Plaintiff has not introduced evidence showing anyone—*including Plaintiff*—was denied a banking opportunity as a result of ChexSystems' allegedly inaccurate reporting. Plaintiff concedes "the class includes many consumers who may not even be *aware* that ChexSystems misreported their discharged debt." Mot. 11 (emphasis added). But that means there is no way these individuals were harmed because, if a consumer *had* lost a banking opportunity based on a ChexSystems' report, the FCRA mandates the bank provide the consumer an adverse action notice that identifies ChexSystems. *See* 15 U.S.C. § 1681m. In fact, [redacted]*%* of the [redacted] consumers in Mr. Jaffe's sample received an "ACCEPT" recommendation. Kalat Rep. ¶ 75. Plaintiff is simply speculating about lost banking opportunities, which is insufficient. *Alig*, 126 F.4th at 976 ("[T]he plaintiffs' class-wide showing in this case is simply 'too speculative to support Article III standing.'").

***b. Plaintiff has no evidence of classwide reputational harm.***

Plaintiff also has no evidence of "reputational harm" across the purported class. "Reputational harm can be a concrete injury, but ***only if*** the misleading information was brought to the attention of a third party who understood its defamatory significance." *Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 292 (4th Cir. 2024). The Fourth Circuit recently vacated a district court's class certification order for failure to adequately consider this point. *Id.*

Reputational harm standing requires the Court find for *each* class member that (1) the report contained inaccurate information, (2) the recipient reviewed the information, (3) the recipient understood the information to be inaccurate, *and* (4) the class member suffered a resulting injury. *See id.* This requires individualized proof of the consumers' circumstances, the report recipients' understanding and use of the reporting (or lack thereof), and the broader impact of the report. Plaintiff has no way to show (and certainly has no evidence before the Court) that the bank recipient of *each* report read and considered the allegedly inaccurate information, and each class member suffered a resulting injury-in-fact. After all, Plaintiff could not even prove those facts for her. Jackson Decl. ¶¶ 9, 20 (explaining Chartway did not deny her an account).

And contrary to Plaintiff's speculation, the *evidence* demonstrates that many financial institutions likely *never* consider an unpaid closure on a ChexSystems' report. Each ChexSystems customer adopts its own decisioning strategy when evaluating an account application. Bruce Decl. ¶ 7. ChexSystems produced multiple customer strategies in discovery, many of which demonstrate the financial institution *never considers* unpaid closures in its decisioning strategy. Bruce Decl. ¶ 8; *see, e.g.*, Chex006994, at -6999, **Ex. 2-A** (not considering unpaid closures at other financial institutions); Chex007040, at -44, **Ex. 2-B** (not considering unpaid closures). There is no way anyone can assume classwide reputational harm when Plaintiff has no evidence that *anyone*

considered the unpaid closures such that it harmed a consumer's reputation, and when ChexSystems' evidence shows that many financial institutions specifically *do not consider it*.

Courts often deny certification in similar scenarios. *See Harper v. Trans Union, LLC*, No. 04-3510, 2006 WL 3762035, at *8–9 (E.D. Pa. Dec. 20, 2006) ("[B]y asserting that individualized inquiries are not necessary and that common questions predominate, plaintiff Harper asks me to read a strict liability standard into § 1681e(b). I refuse to hold that a willful and/or negligent violation of the FCRA exposes CRAs to liability with no factual inquiry into whether the absent class members were injured by the violation."); *accord Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1274 (11th Cir. 2019) (vacating class certification and finding that "[t]he district court will have to determine whether each of the absent class members has standing before they could be granted any relief. That is an individualized issue, and it is one that the district court did not account for or consider in any way in deciding whether issues common to the class actually predominated over issues that were individualized to each class member").

The Court cannot ignore Plaintiff's failure to show injury-in-fact for each Proposed Class member. "[A]ttempting to define a class with such a high share of uninjured members [] raises Article III standing concerns…such concerns are not to be ignored." *Mr. Dee's Inc. v. Inmar, Inc.*, 127 F.4th 925, 934 (4th Cir. 2025).

**3. Plaintiff cannot prove that ChexSystems failed to use reasonable procedures with respect to the class based on common proof.**

Plaintiff's claim of classwide inaccuracy is remarkable given how divorced it is from the evidence. By her own expert's calculation, ChexSystems has an ***accuracy*** rate of [redacted]*%*. Mot. 9 (claiming [redacted] errors in [redacted] reports). That is likely why her Motion leans heavily on the second element of her claim: reasonable procedures under § 1681e(b). Although the reasonableness of procedures does not matter if Plaintiff cannot show classwide inaccuracy, she

cannot show unreasonable procedures across the class either.

The Court has already construed Plaintiff's theory of reasonable procedures to "***not*** rest on an argument that a [CRA] is bound in any and all circumstances to check the bankruptcy record before preparing a report." Mem. Op. 5, Dkt. No. 54 (emphasis added). This presents a problem for class certification, where Plaintiff asserts the same theory to support class certification that this Court already rejected: that ChexSystems applied a uniform policy failing to preemptively check bankruptcy records "in any and all circumstances." *See* Mot. 19-20. At class certification, Plaintiff must show ChexSystems was obligated to check each *unique* class member for bankruptcy prior to a report; not that ChexSystems failed to check bankruptcies "in any and all circumstances." Plaintiff has not shown any way to establish this by common proof.

Nor could she. To prove it was unreasonable classwide for ChexSystems to report information from furnishers without pre-investigating (scrubbing) that information, she must first show ChexSystems had reason to believe each furnisher was unreliable. *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 (11th Cir. 2021) ("[A] reporting agency's procedures will not be deemed unreasonable unless the agency has a reason to believe that the information supplied to it by a data furnisher is unreliable.") (citations omitted); Hendricks Dep. 21:20-25 (agreeing that it is "not industry practice for a CRA that already has data from a furnisher in its file to go back to the furnisher to verify the information before it reports it to the end user"). Plaintiff has no evidence of unreliability for any specific furnisher. And the evidence as to her own furnisher, SunTrust, shows the opposite.

As to SunTrust, ChexSystems produced abundant evidence showing SunTrust is a reliable furnisher. *See supra* Part II.C. To highlight just a few items: (1) per ChexSystems' data contribution procedures, SunTrust must delete discharged accounts; (2) SunTrust and Truist

deleted [redacted] closures reported to ChexSystems that had since been discharged in bankruptcy; (3) there is not a single closure from SunTrust in Mr. Jaffe's representative sample of [redacted] closures supposedly discharged in bankruptcy; and (4) ChexSystems reminded SunTrust as part of its audit process of the need to delete accounts discharged in bankruptcy. Jones Decl. ¶ 33.

Nor is there any classwide evidence of a single furnisher being unreliable. Each furnisher is contractually required to follow ChexSystems' data contribution policies, is contractually required to avoid reporting accounts in bankruptcy, and is contractually required to delete accounts that are subsequently discharged in bankruptcy. And ChexSystems monitors these furnishers on a monthly basis, with ChexSystems suspending or terminating furnishers that fail to comply. To the extent any furnisher is somehow unreliable despite the labyrinth of compliance infrastructure ChexSystems employs, it will turn on individualized evidence as to that furnisher.

The evidence bears this out. As examples only, [redacted] and [redacted] deleted [redacted] and [redacted] closures reported to ChexSystems that had since been discharged in bankruptcy, Jones Decl. ¶ 44, and those financial institutions did not have a single closure that appears in Mr. Jaffe's representative set of [redacted] closures, Kalat Rep. ¶ 60. How could Plaintiff just *assume* these furnishers are unreliable—along with every furnisher across the class—with no evidence at all and when the evidence shows the opposite? She cannot. It will turn on unique facts as to each furnisher.

**4. The Court cannot properly certify a nationwide class if ChexSystems could assert defenses in other jurisdictions.**

It would also be improper to certify a nationwide class if doing so deprived ChexSystems of defenses it could assert against individual class member's claims. *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) ("A defendant in a class action has a due process right to raise individual challenges and defenses to claims, and a class action cannot be certified in a way that eviscerates this right or masks individual issues."). Plaintiff claims it is *always* unreasonable to

rely on furnishers without independent verification of bankruptcy records. Plaintiff relies on a decade old *settlement* as supposed proof of industry standard. Mot. 25. At the time, there was no authoritative guidance on CRA requirements relative to bankruptcy "scrubs" under the FCRA. Now there is—and it is not good for Plaintiff.

In 2022, the Eighth Circuit issued a published opinion officially holding that a CRA is not required to preemptively check PACER before publishing a report, even if the CRA was aware of the discharge. *See Rydholm*, 44 F.4th at 1109. The appellate court found that "[t]hough both CRAs had notice of Rydholm's general discharge, that fact alone is insufficient to trigger a duty to investigate." *Id.* Plaintiff's facts in this case track with *Rydholm*: ChexSystems had no knowledge of supposed "systemic problems" due to bankruptcies, ChexSystems never received a dispute from Plaintiff, SunTrust is a reliable furnisher, and the reported Account balance was not facially inaccurate or inconsistent with preexisting records.

Although Plaintiff should not be able to prevail on her claim anywhere, she *certainly* cannot prevail under binding Eighth Circuit precedent. It would be improper for this Court to certify a nationwide class in such a way that ChexSystems is denied the benefit of controlling precedent that provides it a complete defense in certain jurisdictions.

**5. Plaintiff cannot prove that ChexSystems <u>willfully</u> violated the FCRA with respect to the class based on common proof.**

Plaintiff seeks only statutory damages on behalf of the Proposed Class. *See* 2d Am. Compl. ¶¶ 71-72. She can only obtain statutory damages if she can show ChexSystems *willfully* violated the FCRA as to each Proposed Class member. *See* 15 U.S.C. § 1681n(a). Despite its importance, Plaintiff does not demonstrate how she can show willfulness as to *each* report based on common proof. Instead, Plaintiff asserts that *other* courts have found in *other* factual circumstances that willfulness, on *different* facts, posed a common question. Mot. 20. This is not sufficient.

Plaintiff wrongly claims that "finding that willfulness is individualized … [would be] contrary to nearly every appellate and district court authority to have considered this question, including—post-*Soutter*—the Fourth Circuit's decision *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013)." Mot. 20. In *Ealy*, the Fourth Circuit ***reversed class certification***, finding that "*the district court did not conduct* the required separate inquiry as to whether common questions of law or fact predominate over those affecting only individual class members." *Ealy*, 514 F. App'x at 306 (emphasis added). Similarly, the Fourth Circuit in *Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260 (4th Cir. 2012), ***reversed class certification***, holding that willfulness for statutory damages "typically require[s] an individualized inquiry." *Id.* at 265. Other courts repeatedly hold similarly. *See, e.g., Jones v. Realpage, Inc.*, No.3:19-CV-2087-B, 2021 WL 852218, at *7 (N.D. Tex. Jan. 27, 2021) (an individualized inquiry is required on whether defendant acted willfully with respect to putative class members' reports); *Gomez v. Kroll Factual Data, Inc.*, No. 13-cv-0445-WJM-KMT, 2014 WL 1456530, at *4 (D. Colo. Apr. 14, 2014) (same); *Wilson*, 2023 WL 5667905, at *4 (same).

In individual trials, ChexSystems would be entitled to put on individualized evidence as to willfulness. This would look at issues like: (1) was the account discharged; (2) was the discharge objectively and readily verifiable; (3) was the furnisher reliable; (4) was ChexSystems on notice that the furnisher was unreliable; and (5) did ChexSystems have in its records an indication that the account pre-dated the bankruptcy, among others. Each willfulness question cannot be answered on a class basis—it requires analysis of the facts as to each consumer.

Plaintiff is wrong on the law. As the Fourth Circuit has said: statutory damages, which need willfulness, "typically require an individualized inquiry." *Soutter*, 498 F. App'x at 265.

*****

The Fourth Circuit takes commonality and predominance seriously. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 363 (4th Cir. 2014) (abuse of discretion to "relax[] the plaintiffs' burden of proof with respect to Rule 23's commonality requirement"). Plaintiff cannot satisfy either.

**C. Plaintiff's Proposed Class fails for lack of ascertainability.**

**1. Plaintiff has not defined an ascertainable class.**

Plaintiff has also not defined a readily ascertainable class. Without this, it is impossible for the Court to issue an order that "define[s] the class." Fed. R. Civ. P. 23(c)(1)(B).

The Fourth Circuit recognizes that Rule 23 contains a limitation that "[a] class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *EQT Prod.*, 764 F.3d at 358. This analysis focuses on whether "it is administratively feasible for the court to determine whether a particular individual is a member" of the proposed class based on objective criteria. *Id.* (citation omitted). If the Court would need to engage in "extensive and individualized fact-finding or 'mini-trials'" to identify members of the class, then the proposed class is not "readily identifiable." *Id.* (citations omitted). Practically, this ability to readily identify class members is important because, if certified, "Rule 23(b)(3) requires notice to class members, who are afforded an opportunity to opt-out of the class at the certification stage." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655 (4th Cir. 2019).

Plaintiff claims "[t]he class is defined by objective criteria – essentially, the presence of a specific data error (an unpaid account closure that pre-dated a Chapter 7 discharge) in a ChexSystems report during a fixed time frame." Mot. 12-13. Obviously, Plaintiff's description conflicts with her proposed class definition, which requires that the account pre-date a bankruptcy *petition* (not the *discharge*) and not be affirmed or subject to an adversarial proceeding. *Id.* at 8.

Ignoring this dissonance, Plaintiff claims the class can be determined "by matching account

closure dates against bankruptcy discharge dates," and that Mr. Jaffe "has already performed this matching exercise on sample data…confirming that the criteria can be uniformly applied by algorithm." *Id.* at 13. This is a gross misstatement. As discussed above, Mr. Jaffe did *not* do a matching analysis on the criteria in Plaintiff's class definition, which requires review of the *petition* date, reaffirmation agreements, and adversarial proceedings. *See generally* Jaffe Rep. (no reference to "reaffirmation" or "adversarial proceeding"). It also requires an individualized review of exceptions to discharge. As Plaintiff's other expert, Mr. Cox, confirms, determining *actual* discharge requires a multi-step, manual review. Cox Rep. 11; Cox Dep. 115:12-25 (confirming his Opinion 3 reference to discharge verification was for a manual review of bankruptcy dockets, not an automated scrub). Not an algorithm.

Plaintiff also claims ascertaining the class is "a matter of querying ChexSystems' data." Mot. 12-13. This is also false. ChexSystems does not ingest *any bankruptcy* data into its consumer files. Bruce Decl. ¶ 19. It is not a National Bureau. To the extent Plaintiff is referencing RiskView data, that (1) does not provide account-level data, (2) says nothing about whether an *account* was discharged, (3) says nothing about adversarial proceedings, (4) says nothing about exceptions to discharge, and (5) says nothing about re-affirmation. Bruce Decl. ¶ 17; Kalat Rep. ¶ 67-68. As Mr. Cox confirmed, determining discharge requires a multi-step manual review of multiple bankruptcy filings compared to the information on the account at issue. Cox Dep. 80:19-90:25.

This comparison is also no straightforward task when compounded by [redacted] of reports. Plaintiff does not acknowledge or address the strict data limitations of using PACER, which limits commercial searches to be run at night and limits the inquiries per night. Kalat Rep. ¶ 51-55 (noting that PACER is "unlikely to complete more than several hundred docket searches per session"). Further, there is no automatic way to search PACER for *account-specific* records,

such as whether an individual account was included in bankruptcy. Kalat Rep. ¶¶ 39, 48. Plaintiff has not identified any means by which this Court could readily identify which consumer accounts were not the subject of reaffirmation agreements or adversarial proceedings, as these are not the types of bulk data available from PACER or third-party sources. Kalat Rep. ¶ 48.

To the extent Plaintiff advocates for her class because it could be manually reviewed through public records, this is a nonstarter. A class that requires significant manual review to determine class members is not "readily" identifiable. *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 WL 2155221, at *23 (D.S.C. May 14, 2024) (recognizing that "Fourth Circuit is instructing this Court and others that a certain degree of manual review can preclude ascertainability"); *Piotrowski v. Wells Fargo Bank, NA*, No. CIV.A. DKC 11-3758, 2015 WL 4602591, at *16 (D. Md. July 29, 2015) ("The fact that Wells Fargo cannot determine apart from performing a loan-by-loan review when a loan modification application was complete poses an administrative barrier to ascertaining a class who were not provided written notice of any action on their completed application within thirty (30) days from submission.").

The Fourth Circuit has reversed class certification because a district court wrongly "glossed over" administrative barriers when it found the class could be determined by "merely" reviewing "local land records," which was improper because, like analyzing individual bankruptcy dockets, "resolving ownership based on land records can be a complicated and individualized process." *EQT Prod.*, 764 F.3d at 359. There is no evidence showing that ChexSystems could mechanically search PACER or third-party records for consumer bankruptcy information that would identify if a *specific account* was (1) included in the bankruptcy discharge, (2) not subject to an exception, (3) not subject to an adversarial proceeding, and (4) not subject to a reaffirmation agreement. This dooms Plaintiff's Motion. *In re Blackbaud*, 2024 WL 2155221, at *23 (plaintiffs had "not provided

a timely raised, sufficiently tested, thoroughly briefed, and administratively feasible method of using those records to ascertain a class," which precluded certification); *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th, 202, 212 (4th Cir. 2024) (affirming denial of class certification where individualized review would be necessary to ascertain class).

**2. Plaintiff impermissibly proposed a new class definition post-discovery.**

The Court should also deny Plaintiff's Motion because "a Plaintiff may not proffer, after the close of discovery, class definitions that are 'radically different' from what was pled in the complaint." *Scroggins v. Lexisnexis Risk Sols. Fl Inc.*, No. 3:22CV545, 2025 WL 3216323, at *22 (E.D. Va. Mar. 30, 2025).

In her *proposed* Second Amended Complaint, and her Motion, Plaintiff proposes a radically different class than she defined in her Amended Complaint and on which the parties conducted discovery. Plaintiff's prior class definition limited the proposed class to individuals for which a debt was *scheduled* in bankruptcy. Am. Compl. ¶ 63. The parties conducted discovery on this class definition. *E.g.*, Hendricks Dep. 69:10-70:15 (Plaintiff's expert testifying that his "understanding is this [case] is about scheduled debts"), 83:14-24 (discussing consideration of whether Plaintiff's debt was scheduled in her bankruptcy), 101:14-19 (testifying that "there's usually a kind of a notice or schedule of a bankruptcy court saying these are the tradelines, the accounts, the debts that are discharged"). After discovery was completed, Plaintiff moved to amend her complaint and seek class certification on an entirely new class definition that *completely removed the requirement that a debt be scheduled in bankruptcy*, and added an entirely new requirement, upon which the parties did not complete any factual discovery, regarding reaffirmation and adversarial proceedings. Dkt. No. 94. Plaintiff cannot change the class certification goalposts post-discovery.

Plaintiff's response in her briefing on the motion for leave to amend is that "[t]here has not been any mystery or uncertainty for Defendant as to the theory of Plaintiff's case – that this case models *White-Hernandez*…." Dkt. No. 107, at 5. Plaintiff's consistent reference to *White-Hernandez* throughout the case is both irrelevant and entirely unhelpful to her case.

First, *White-Hernandez* was a *settlement*—not a determination on the merits, so it does not have any persuasive effect as to the merits here, particularly when courts analyzing the substance subsequently *rejected* Plaintiff's argument. *See Rydholm*, 44 F.4th at 1109.

Next, the facts are very different than *White-Hernandez*, which did not apply to closed accounts or to post-petition debts, and excluded numerous types of accounts. *See* Order ¶ 3.2(c)(i), ¶ 3.2(b)(i), (c)(i), ¶ 3.2(c)(ii)(A), ¶ 3.2(c)(ii)(C), ¶ 3.2(c)(ii)(D), Dkt. No. 338, *White v. Experian Info. Solutions, Inc.*, 8:05-cv-01070 (C.D. Cal. Aug. 19, 2008). *White-Hernandez* was also limited to the National Bureaus. ***Plaintiff's own expert admitted he did not know of a single non-National Bureau CRA that performs a bankruptcy scrub***. Hendricks Dep. 26:6-9.

Further, the presumptions the National Bureaus agreed to in the *White-Hernandez* settlement were triggered by the National Bureaus "adding a public record entry reflecting a Chapter 7 discharge to a Consumer's credit File." White Order ¶ 3.2. If a CRA never reports bankruptcy records (including discharges) in the first place, like ChexSystems, no scrub was required under *White-Hernandez*: the settlement did not require the National Bureaus to *affirmatively* procure bankruptcy records if they did not otherwise procure them. *Id.*

Here, ChexSystems reported Plaintiff's closed, post-petition Account. As a result, it would never have been within *White-Hernandez*'s settlement scrub. In fact, as the Court knows because the Honorable Judge Hanes was on brief at the time, Plaintiff's counsel vigorously (and correctly argued) in a prior case that there was a "***key, fatal distinction between White and this case—White***

***involved debts incurred pre-bankruptcy, while Plaintiff's claims here involve debts incurred post-bankruptcy, and where there was a conversion from Chapter 13 to Chapter 7***." Pl's Opp. to Def's Mot. Transfer, *Solomon v. Equifax Info. Servs., LLC*, No. 3:19-CV-0266 (E.D.Va. Sept. 24, 2019). The same applies here.

Plaintiff improperly asserts a wholly new class, no longer dependent on whether a debt was scheduled, based on convoluted and unsupported assumptions. Her justification that this case is like *White-Hernandez* fails thoroughly. This Court has already found that a dilatory attempt to re-write Plaintiff's pleading is improper. *Scroggins*, 2025 WL 3216323, at *19 (denying certification when plaintiff "completely remove[d]" from her class a defining characteristic, finding doing so went beyond refining the definition in her complaint and was not raised at an appropriate time).

## VI. CONCLUSION

For the reasons above, the Court should deny Plaintiff's motion for class certification.

Date: March 12, 2026

By: /s/ David M. Gettings

David M. Gettings (VSB # 80394)
Amanda K. Blackmon (VSB # 87326)
Kathleen M. Hutchenreuther (VSB # 90845)
TROUTMAN PEPPER LOCKE LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7500
Facsimile: (757) 687-7510
Email: dave.gettings@troutman.com
Email: amanda.blackmon@troutman.com
Email: kathleen.hutchenreuther@troutman.com

Kearstin Harumi Sale (*admitted pro hac vice*)
TROUTMAN PEPPER LOCKE LLP
600 Peachtree Street NE, Suite 3000
Atlanta, Georgia 30308
Telephone: 404.885.3893
Facsimile: 404.885.3900
Email: kearstin.sale@troutman.com

*Counsel for Defendant Chex Systems, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2026, I caused the foregoing document to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: */s/ David M. Gettings*
David M. Gettings (VSB # 80394)