**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

SHARON K. RIDDICK, *on behalf of herself and all others similarly situated,*

Plaintiff,

v.

CHEX SYSTEMS, INC.

Defendant.

Case No. 2:24-cv-00700

**CHEX SYSTEMS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF H. DAVID COX**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. SUMMARY OF OPINIONS ..... 3

III. LEGAL STANDARD ..... 4

IV. ARGUMENT ..... 5

A. All Mr. Cox's opinions are unreliable because he did not review the record and assumes the facts at issue. ..... 5

1. Mr. Cox's Opinions 1, 2, and 4 are unreliable because of consistent and pervasive factual inaccuracies, or a lack of a factual basis. ..... 6

a. Mr. Cox assumes that Plaintiff's account was reported by ChexSystems as "unpaid charge-off" despite undisputed evidence. ..... 7

b. Mr. Cox assumes that Plaintiff's SunTrust account debt was presumptively discharged. ..... 8

c. Mr. Cox assumes that Plaintiff was denied a Chartway account despite undisputed evidence. ..... 9

2. Mr. Cox has no basis to conclude that ChexSystems' policies and procedures are inadequate without reviewing ChexSystems' policies and procedures. ..... 12

B. Plaintiff cannot demonstrate that Mr. Cox's opinions are the product of a reliable methodology or that Mr. Cox reliably applied that methodology. ..... 14

1. Mr. Cox conceded that his Report did not contain the entirety of his methodology, which is much more complicated. ..... 14

2. Mr. Cox did not reliably apply his methodology to the facts of this case because he did not apply it at scale. ..... 18

C. Mr. Cox's conclusions in Opinion 4 are unreliable because they do not correlate to his background or experience. ..... 20

D. Mr. Cox's opinions on the ultimate legal issue are impermissible because they are legal conclusions. ..... 21

V. CONCLUSION ..... 22

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Brainchild Surgical Devices, LLC v. CPA Global Ltd.*,
144 F.4th 238 (4th Cir. 2025) ....................20

*Collins v. Safeco Ins. Co. of Ind.*,
No. 3:18-cv-01788, 2020 WL 95488 (N.D. Tex. Jan. 8, 2020)....................5

*Crummett v. Bunn-O-Matic Corp.*,
No. 3:21-cv-120, 2021 WL 5507735 (E.D. Va. Nov. 24, 2021) ....................13

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....................4, 21

*Gen. Electric Co. v. Joiner*,
522 U.S. 136 (1997)....................5

*Georges v. Dominion Payroll Servs., LLC*,
No. 3:16-cv-777, 2018 WL 2088751 (E.D. Va. May 4, 2018)....................21

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)....................4

*Plantan v. Smith*,
No. 3:22-cv-407, 2024 WL 3048648 (E.D. Va. June 18, 2024)....................13, 18

*Sardis v. Overhead Door Corporation*,
10 F.4th 268 (4th Cir. 2021) .................... *passim*

*Tyger Constr. Co. v. Pensacola Constr. Co.*,
29 F.3d 137 (4th Cir. 1994) ....................5

*United States v. Barton*,
909 F.3d 1323 (11th Cir. 2018) ....................4

*United States v. Ferncreek Cardiology, P.A.*,
No. 5:17-cv-616-FL, 2025 WL 871616 (E.D.N.C. Mar. 20, 2025)....................5

*United States v. McIver*,
470 F.3d 550 (4th Cir. 2006) ....................21

*United States v. Offill*,
666 F.3d 168 (4th Cir. 2011) ....................21

**Statutes and Rules**

Fed. R. Evid. 104(a) ....................4, 5

Fed. R. Evid. 702 ....................4, 5, 18, 19

Fed. R. Evid. 702(a) ....................20

Fed. R. Evid. 702(b) ....................12

Chex Systems, Inc. ("ChexSystems") submits this Memorandum of Law in Support of its Motion to Exclude the Testimony of Sharon K. Riddick's ("Plaintiff") Proposed Expert, H. David Cox.

## I. INTRODUCTION

Since the Fourth Circuit decided *Sardis v. Overhead Door Corporation*, 10 F.4th 268 (4th Cir. 2021), expert testimony faces a higher level of scrutiny. The expert report submitted by H. David Cox ("Mr. Cox") on January 20, 2026, attached hereto as **Exhibit 1** (the "Report"), shows why that higher level of scrutiny is necessary. Mr. Cox's Report offers four opinions, discussing: (1) whether ChexSystems' credit reporting is inaccurate; (2) whether ChexSystems can easily verify bankruptcy discharges through public records; (3) whether this verification is easy and cost-effective at scale; and (4) whether Plaintiff and purported class members suffered harm. None of the ultimate opinions meet the rigorous standard for admission. The Court should strike them for four independent reasons.

***First***, multiple opinions are unreliable because Mr. Cox lacks a sufficient factual basis for his conclusions. He limited his review of the record and, instead, relied on the allegations in the Complaint – including allegations that have been disproven – without any independent analysis. These are not simple errors or minor details that Mr. Cox overlooked, they are fundamental mistakes that go to the nature of ChexSystems' reporting, whether it maintains policies and procedures (it does, but Mr. Cox relied on allegations that it does not), and whether Plaintiff was ever denied a bank account based on ChexSystems reporting an allegedly discharged account (she was not denied an account). In short, Mr. Cox does not know the facts in evidence, meaning his opinions are based on guesswork in that regard.

***Second***, Mr. Cox's opinions are the product of a flawed methodology that was not reliably applied. In his Report, Mr. Cox opined that it is "straightforward" to determine whether a debt was discharged – something belied by Plaintiff's own testimony – and he outlined a manual review process for this determination. Yet, in his deposition, his "simple process" fell apart, with Mr. Cox conceding that his methodology for determining discharge includes at least twelve (12) steps, requires legal training, and includes multiple judgment calls. Compounding the error, Mr. Cox never evaluated his methodology at ChexSystems' scale, or anything approximating it. His opinion that ChexSystems could have built a cost-effective, automated process that would not require any judgment calls is completely undercut by the fact that Mr. Cox never analyzed how much the process would cost, how to execute it at scale, or if it is even feasible.

***Third***, Mr. Cox fails to connect his qualifications to his conclusions. He is not a medical doctor, mental health professional, or expert on damages caused by credit reporting, yet he offers opinions on emotional distress damages and so-called concrete economic and non-economic damages for Plaintiff and the purported class – all without review of Plaintiff's deposition testimony or any purported class data or documentation.

***Fourth***, Mr. Cox's opinions regarding ChexSystems' alleged inaccurate reporting are impermissible legal conclusions regarding the ultimate legal issue in this case and are meant to usurp the role of the jury.

For these reasons, the Court should exclude Mr. Cox's opinions referenced above under the principles of *Sardis*.

## II. SUMMARY OF OPINIONS[1]

Mr. Cox's Report offers four (4) opinions on three (3) subjects, including: (1) the accuracy of ChexSystems' reporting of "unpaid paid charge-offs" or "events/closures" for bank accounts following a consumer's bankruptcy discharge under Chapter 7 of the Bankruptcy Code; (2) the feasibility of verifying bankruptcy discharges; and (3) the alleged harm to consumers from continued allegedly inaccurate reporting. Ex. 1 at 4, 5-14. His four opinions are:

1. <u>ChexSystems' reporting of Plaintiff's account as "unpaid charge-off" is legally inaccurate</u>. Ex. 1 at 5. According to Mr. Cox, ChexSystems reported Plaintiff's account specifically as "unpaid charge-off" and, in Mr. Cox's opinion, this reporting was legally inaccurate. *Id.* at 5-7.

2. <u>ChexSystems can easily verify discharges through public bankruptcy records</u>. *Id.* at 7-12. Mr. Cox opines, essentially, that bankruptcy is simple and whether a debt is discharged is an objective determination that does not require judgment calls. *Id.* He then outlines a multi-step process that spans three single-spaced pages laying out that determination process. *Id.* at 10-12.

3. <u>There are feasible and cost-effective means that ChexSystems could employ to determine discharges across the purported class</u>. *Id.* at 12-13. He opines that ChexSystems should be using PACER, based upon his understanding of "light users" of the service. *Id.* at 13.

4. <u>Consumers suffer "concrete and predictable harms" as well as "banking-specific impacts" by reporting a discharged debt as an unpaid charge-off</u>. *Id.* at 13-14. Mr. Cox opines that people like Plaintiff, who he believes experienced "an actual denial," suffer economic and

[1] To avoid redundant briefing, ChexSystems incorporates the Statement of Facts from its Opposition to Plaintiff's Motion to Certify a Class, Dkt. No. 110 at 4-17.

non-economic harms, including "emotional distress, reputational injury, and the ongoing fear that any new application may trigger punitive treatment." *Id.*

## III. LEGAL STANDARD

Preliminary questions concerning the qualification of a person to be a witness or the admissibility of evidence are for the Court to determine. Fed. R. Evid. 104(a). Specifically, under Federal Rule of Evidence 702, a qualified expert by knowledge, skill, experience, training, or education may only testify if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. The burden to satisfy the requirements of Rule 702 is on the party offering the testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993); Fed. R. Evid. 104(a).

Rule 702 "imposes a special obligation upon a trial judge to ensure that any and all [expert] testimony . . . is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (internal citations and quotations omitted). This gatekeeping inquiry must be tailored to the facts of the case and the type of expert testimony at issue. *Id.* at 150. Moreover, the importance of this gatekeeping role "cannot be overstated." *Sardis*, 10 F.4th at 283 (quoting *United States v. Barton*, 909 F.3d 1323, 1331 (11th Cir. 2018)). A district court that fails to exclude unreliable expert testimony, and instead instructs a jury regarding the weight to be provided to the expert testimony, is subject to reversal. *Id.* at 286. Highlighting the importance of this role, the *Sardis* court cited the Advisory Committee on Evidence Rules notes to the 2021 amendments to Rule 702, which stated:

> Unfortunately, many courts have held that the critical questions of the sufficiency of an expert's basis for his testimony, and the application of the expert's

> methodology, are generally questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a) and are rejected by this amendment.

*Id.* at 284 (quoting Advisory Comm. on Evid. Rules, Agenda for Committee Meeting 17, at 105, 107 (Apr. 30, 2021)).

## IV. ARGUMENT

### A. All Mr. Cox's opinions are unreliable because he did not review the record and assumes the facts at issue.

Mr. Cox's opinions are improper because they have no evidentiary support or are directly contradicted by record evidence.[2]

To permit expert testimony, the Court must be satisfied that the expert's opinions are grounded in actual facts, not speculation or guesswork. *See United States v. Ferncreek Cardiology, P.A.*, No. 5:17-cv-616-FL, 2025 WL 871616, at *6 (E.D.N.C. Mar. 20, 2025) ("An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record.") (quoting *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994))). Expert opinions may not be "connected to existing data only by the *ipse dixit* of the expert." *Gen. Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702, Advisory Committee Notes (2000). Thus, an expert should be excluded where "there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146.

---

[2] Because Mr. Cox offered opinion about ChexSystems' policies and procedures without reviewing those policies and procedures, as described herein, *all* his opinions about ChexSystems' policies and procedures are unreliable. The absence of any factual basis for his predicate opinions prevents Mr. Cox from demonstrating a sufficient factual basis for his subsequent opinions. *See, e.g.*, *Collins v. Safeco Ins. Co. of Ind.*, No. 3:18-cv-01788, 2020 WL 95488, at *8 (N.D. Tex. Jan. 8, 2020) (excluding expert testimony where the expert's "methodology [was] the fruit of a poisonous tree").

Plaintiff cannot satisfy her burden to show that Mr. Cox's opinions are based on a sufficient and accurate factual record for two reasons.

**First**, Opinions 1, 2, and 4 are premised on inaccurate factual assumptions, including Mr. Cox's incorrect assumption that ChexSystems reported Plaintiff's account as "unpaid charge-off." Ex. 1 at 5-7. Mr. Cox also assumes that Plaintiff's overdraft debt related to her SunTrust account is "presumptively discharged." *Id.* at 9. Last, he incorrectly states Plaintiff was denied an account with Chartway based on ChexSystems' report, and readily admitted that this opinion was based on the Complaint allegations alone. *Id.* at 14; *see also* Cox Deposition Transcript, attached as **Exhibit 2**, at 125:14-126:6.

**Second**, Mr. Cox has no basis to conclude that ChexSystems' policies and procedures were inadequate when he conceded that he ***never reviewed ChexSystems' policies and procedures***. It is inconceivable that a purported expert can offer testimony about the sufficiency of a consumer reporting agency's policies and procedures while simultaneously conceding he never actually reviewed the policies and procedures.

1. Mr. Cox's Opinions 1, 2, and 4 are unreliable because of consistent and pervasive factual inaccuracies, or a lack of a factual basis.

The Court must exclude Opinions 1, 2, and 4 because Mr. Cox based his conclusions on inaccurate factual assumptions and errors. He failed to review salient facts—and most of the underlying record—meaning he did not appreciate the disconnect between his opinions and the evidence. Mr. Cox presumed the allegations in Plaintiff's Complaint were true without reviewing the evidence himself, and without conducting any independent analysis or verification of facts that were uncovered in discovery. This disconnect undermines any confidence in the opinions.

a. *Mr. Cox assumes that Plaintiff's account was reported by ChexSystems as "unpaid charge-off" despite undisputed evidence.*

The very first opinion in Mr. Cox's Report is based on a factual inaccuracy. Specifically, Mr. Cox bases Opinion 1 on the notion that ChexSystems reported Plaintiff's SunTrust closure as an "unpaid charge-off" and "ongoing 'event/closure.'" Ex. 1 at 5. Yet, Mr. Cox conceded in his deposition that he did not review Plaintiff's reports to determine how ChexSystems was *actually* reporting the SunTrust closure.

MR. GETTINGS: Okay. So at the time you prepared your report, you had never reviewed a ChexSystems report on [Plaintiff], correct?

MR. COX: Correct.

MR. GETTINGS: So in your report, you quoted from the ChexSystems report that you'd never actually reviewed; is that right?

MR. COX: Correct, as – yes, as – yes. That's correct.

MR. GETTINGS: How could you quote from a ChexSystems report that you'd never actually reviewed?

MR. COX: Well, this is based on the complaints of the plaintiff that had made these allegations.

MR. GETTINGS: So you opined that ChexSystems' reporting was incomplete and inaccurate without ever actually reviewing ChexSystems's actual reporting; is that right?

MR. COX: Based on the information that the plaintiff has alleged that the report stated, I made that opinion.

MR. GETTINGS: Let me ask the question again. You opined that ChexSystems' report was incomplete and inaccurate without ever reviewing the ChexSystems report on [Plaintiff], correct?

MR. COX: Correct.

Ex. 2 at 43:17-44:16. Once Mr. Cox did review the Qualifile reports, he conceded that the reports do not show Plaintiff's account as "unpaid charge-off." [3] Ex. 2 at 46:9-47:2.

This issue is not semantics – it is a primary example of the fallacies that infect Mr. Cox's Report. With critical errors underpinning Mr. Cox's analysis, the Court cannot satisfy its gatekeeping role to prevent improper "expert" testimony from reaching the jury.

*b. Mr. Cox assumes that Plaintiff's SunTrust account debt was presumptively discharged.*

Mr. Cox's second opinion fares no better. He assumes in Opinion 2 that the overdraft debt related to Plaintiff's SunTrust account is "presumptively discharged." Ex. 1 at 9. In support of this opinion, Mr. Cox states that Plaintiff's debt does not fall under any automatic nondischargeable category, and no creditor filed an adversary proceeding to except it from discharge. *Id.* According to Mr. Cox, it would be "straightforward" for ChexSystems to figure out Plaintiff's discharge. *Id.* at 7 ("Verification is simple: Search the debtor's name and approximate filing date on PACER (Public Access to Court Electronic Records), retrieve the docket (cost ~$0.10/page), and review the discharge order (Docket No. typically 20–30). This should take under 5 minutes and confirms inclusion of the specific creditor/debt.").

However, in practice, this opinion falls apart – and there is no better example than Plaintiff's own facts. In his deposition, Mr. Cox agreed that in a Chapter 13 case that is converted to Chapter 7, only debts that existed pre-conversion are subject to discharge. Ex. 2 at 70:20-25.

---

[3] To be clear, the "ChexSystems History" portion of the report details that ChexSystems reported Plaintiff as having a closed account which was unpaid—this is true. *See* Plaintiff's Deposition Transcript, attached as **Exhibit 3**, at 70:10-17 (admitting the amount she owed SunTrust was unpaid); 119:12-14 (admitting she never paid SunTrust). Additionally, in the "Closure Details" section of the report, ChexSystems reported that SunTrust had charged off the account in the amount of $458.66, but that the account was not in collections—this is also true. *Id.* at 118:22-119:3 (admitting that SunTrust charged off her account). ChexSystems did not report Plaintiff's account as "unpaid charge-off"—as Mr. Cox opines. *See* Ex. 1 at 5-7.

And debts that were post-conversion are not subject to a discharge order. *Id.* at 71:1-5. However, as Mr. Cox also concedes, Plaintiff filed her notice of voluntary conversion to Chapter 7 on June 17, 2019, making this date the operative date for determining discharge. *Id.* at 71:21-72:2; 104:4-8. Yet the *only date* in ChexSystems' records for Plaintiff's debt was July 12, 2019, which *does not* predate Plaintiff's conversion date. *See id.* at 73:15-18; 105:6-10. When pressed about this critical distinction, Mr. Cox was forced to admit that ChexSystems would ***not*** be able to definitively say that Plaintiff's debt was discharged based on its records:

> MR. GETTINGS: But [ChexSystems] wouldn't be able to definitively say that the debt was discharged, based on those two dates, correct?
>
> MR. COX: With those two dates, they would not be able to definitively say.

*Id.* at 106:13-17.

Mr. Cox's opinion is based on his assumption that bankruptcy is simple, clear, and easy-to-determine. Yet the facts specific to Plaintiff – facts which Mr. Cox did not review – show this is not the case. By *assuming* that Plaintiff's account was discharged to arrive at a clean conclusion, Mr. Cox shortcuts any true analysis. Mr. Cox's assumptions about Plaintiff's account fatally undermine his second opinion.

*c. Mr. Cox assumes that Plaintiff was denied a Chartway account despite undisputed evidence.*

Last, in his fourth opinion, Mr. Cox opines that Plaintiff and purported class members were harmed, but this opinion is infected with factual inaccuracies. And it has no basis in any facts pertaining to the purported class.

As to Plaintiff, Mr. Cox assumes, without reviewing the record, that Chartway denied Plaintiff's account applications, and that she suffered additional damages flowing from that denial. But the evidence tells a different story. At his deposition, Mr. Cox conceded he never reviewed

the sworn testimony from Chartway, which confirmed that Chartway never denied Plaintiff an account, much less denied an account due to ChexSystems' reports. *Id.* at 34:14-16 ("Did you review the declaration from Chartway in this case? No, I did not."). During his deposition Mr. Cox also admitted that he based his opinion purely on the allegations in the Complaint and he could not recall if he knew that Chartway provided a declaration stating it never denied Plaintiff an account. *Id.* at 125:14-126:126:6.

Despite not reviewing the actual evidence in the record, Mr. Cox concluded in Opinion 4 that Plaintiff experienced "an actual denial . . . due to a ChexSystems report" and cited this purported "actual denial" as evidence of Plaintiff's damages. Ex. 1 at 13-14. Not only is this conclusion factually inaccurate, Mr. Cox extrapolated this conclusion to the putative class, concluding that denials resulting from purported "inaccuracies undermine the bankruptcy 'fresh start,'" resulting in "non-economic injuries that courts recognize as concrete." *Id.* at 13. Yet, these opinions have no basis in the factual record. This is the guesswork the Fourth Circuit warned against in *Sardis*. 10 F.4th at 295 n.6 (finding that, without a proper foundation, expert testimony "is nothing more than . . . mere *ipse dixit*, [a] speculative guess . . .").

Mr. Cox's opinions regarding harms to the purported class are even hollower. In Opinion 4, Mr. Cox opines that members of the purported class suffered "real and measurable harm." Ex. 1 at 13. But he is not basing this opinion on *any evidence* as to purported class members. He did not review any such evidence:

MR. GETTINGS: You did not review any consumer data samples ChexSystems produced in this case, correct?

MR. COX: Correct.

MR. GETTINGS: You did not review any bankruptcy files on purported class members besides [Plaintiff] in this case, correct?

MR. COX: Correct.

Ex. 2 at 34:21-35:2.

MR. GETTINGS: You did not review any ChexSystems consumer reports in this case besides potentially [Plaintiff], correct?

MR. COX: Correct.

MR. GETTINGS And you did not review any account applications that any consumers could have submitted to banks or credit unions or financial institutions in this case, right?

MR. COX: Correct.

*Id.* at 35:9-17.

MR. GETTINGS: You have not reviewed any adverse action letters from any financial institutions in this case, correct?

MR. COX: Correct.

*Id.* at 123:5-8.

MR. GETTINGS: And you did not review any account opening decisions that any ChexSystems customers made based on ChexSystems reports, correct?

MR. COX: Correct.

*Id.* at 123:9-12.

MR. GETTINGS: You have never reviewed anyevidence in this case showing a financial institution rejecting a consumer's application based on a ChexSystems report, correct?

MR. COX: I don't believe I've reviewed any evidence of that.

*Id.* at 124:21-1.

MR. GETTINGS: And you have not reviewed any evidence in this case showing a financial institution forcing a consumer into a higher cost alternative to a checking account based on a ChexSystems report, correct?

MR. COX: That's correct.

*Id.* at 125:2-7.

In fact, in his deposition, Mr. Cox was forced to admit away any opinion as to harm pertaining to the purported class as speculation because he never reviewed *any evidence* pertaining to purported class wide harm.

> MR. GETTINGS: So do you agree that in order to make an actual determination of harm, you would need to review the actual evidence pertaining to a consumer?
>
> MR. COX: That would be helpful information.
>
> MR. GETTINGS: ***And without that information, you're just speculating as to harm, correct?***
>
> MR. COX: ***Yes.***

*Id.* at 126:25-127:6 (emphasis added).

The Court must satisfy itself that expert opinion is based on sufficient facts or data. Fed. R. Evid. 702(b). The consistent errors in Mr. Cox's underlying assumptions—and the complete lack of a factual basis for his opinions of purported class-wide harm—make clear that his opinions do not meet the standard for expert testimony in this Court.

2. Mr. Cox has no basis to conclude that ChexSystems' policies and procedures are inadequate without reviewing ChexSystems' policies and procedures.

Throughout his Report, Mr. Cox makes suggestions that ChexSystems' procedures are inadequate and that a review of bankruptcy dockets could remedy this alleged deficiency. For example, in the factual background section of his Report, Mr. Cox recounts the Amended Complaint's false allegations that ChexSystems "never evaluates whether data sources like SunTrust are reliable." Ex. 1 at 5. In Opinion 1, Mr. Cox alludes to the alleged "class-wide" impact of ChexSystems' procedures. *Id.* at 6 (discussing charge-offs based on furnisher data). To the extent Mr. Cox intends to opine on ChexSystems' policies and procedures, that would be

impermissible. Like Mr. Hendricks before him, the Court cannot conclude that any of Mr. Cox's opinions pertaining to ChexSystems' policies and procedures rest on a sufficient factual basis when he readily admitted he did not review the policies and procedures ChexSystems produced.

Where a proffered expert offers opinion without analyzing "important and available information" that is critical to his or her opinion, exclusion is required. *Plantan v. Smith*, No. 3:22-cv-407, 2024 WL 3048648, at *10-11 (E.D. Va. June 18, 2024). And, when an expert offers opinion about an available product or service without reviewing that product or service, a district court cannot find that the expert is reliable. *See, e.g.*, *Crummett v. Bunn-O-Matic Corp.*, No. 3:21-cv-120, 2021 WL 5507735, at *5 (E.D. Va. Nov. 24, 2021) (excluding opinion when expert failed to conduct any testing and simply "examined 'exemplars'" even though the product at issue was available); *Sardis*, 10 F.4th at 291 (reversing decision to permit expert testimony where expert did not analyze product even though product was available).

Mr. Cox admits that he did not review ChexSystems' policies and procedures:

MR. GETTINGS: You did not review any policies and procedures from any consumer reporting agency in connection with your report, correct?

MR. COX: Correct.

* * * * *

MR. GETTINGS: Rather than going through all of ChexSystems' procedures in this case, can you confirm you've never looked at a single ChexSystems policy or procedure?

MR. COX: Yes, I can confirm that.

MR. GETTINGS: And you've never looked at ChexSystems' records related to the number of times furnishers have told ChexSystems to delete accounts that are in bankruptcy?

MR. COX: Yes, I can confirm that.

MR. GETTINGS: And you've never reviewed ChexSystems' documents it produced related to monitoring furnishers, correct?

MR. COX: Right.

Ex. 2 at 34:17-20; 59:3-16. Mr. Cox never reviewed the core documents evidencing ChexSystems' FCRA and bankruptcy-specific procedures. Thus, to the extent Mr. Cox intends to opine on ChexSystems' policies and procedures—or their adequacy under the FCRA—that would be impermissible.

**B. Plaintiff cannot demonstrate that Mr. Cox's opinions are the product of a reliable methodology or that Mr. Cox reliably applied that methodology.**

The Court should also exclude Opinions 2 and 3 because they are the product of flawed and incomplete methodology that Mr. Cox has not applied at the scale he claims is feasible. Moreover, the flaws in Mr. Cox's methodology are readily apparent when applied to Plaintiff. The "easy and objective" determination of whether a debt is discharged falls away when applied to the facts of this case.

1. Mr. Cox conceded that his Report did not contain the entirety of his methodology, which is much more complicated.

In Opinion 2, Mr. Cox opined that determining whether a debt is discharged is simple, straightforward, objective, and does not require subject judgment. Ex. 1 at 7. In Opinion 3, Mr. Cox opines that there are ready and cost-effective means by which a consumer reporting agency can definitively determine whether a debt has been discharged using this simple, judgment-free approach, presumably at scale. *Id.* at 12-13. In connection with these opinions in his Report, Mr. Cox then offered a *manual review process* to determine whether a debt is discharged, *which a lawyer would need to undertake*, that included the following steps: (1) locate the bankruptcy case; (2) note key dates; (3) identify a discharge order; (4) check for conversion or special circumstances; (5) search for adversary proceedings and non-dischargeability orders; and (6)

search for re-affirmation agreements. *Id.* at 10-11. Mr. Cox cannot opine that determining a bankruptcy discharge is a simple, straightforward process because his own expert Report and testimony belies that conclusion.

Even based on the Report, his methodology for determining whether a debt was discharged was not clear and easy. It required manual review of every consumer bankruptcy, supplemented by a legal professional making judgment calls regarding discharge. Thus, the process he described in his Report actually undermines the opinions he proposes to offer regarding the simplicity of determining discharge. And this process got even more complicated when subject to scrutiny at Mr. Cox's deposition, where he conceded that the manual review methodology actually contained *double* the number of steps he included in his Report:

MR. GETTINGS: So you first need to identify the date on which the debt at issue was incurred, **which is number 1**. You need to go to PACER case locator and look up the consumer, **which is number 2**. You need to scroll through the results to look at each bankruptcy until you find the one that belongs to the consumer, **which was 3**. You need to pull up the docket, **which was 4**. You need to scroll through the docket to identify what chapter of bankruptcy the consumer has filed, **which is 5**. You need to scroll through the docket to identify whether a discharge order has been entered in the bankruptcy case, **which is 6**. You need to search the bankruptcy docket to determine if the bankruptcy has been converted at any time in its life, **which is 7**. You need to search the bankruptcy docket to determine if the bankruptcy was subject to special circumstances, **which is 8**. You need to determine whether a Chapter 7 was an asset or no-asset bankruptcy, **which was 9**. You need to search for whether there was an adversary proceeding filed in the debtor's bankruptcy, **which was 10**. You need to look for whether the Court entered any non-dischargeability orders **which is 11**. You need to search for reaffirmation agreements, **which is 12**. Did I count those right?

MR. COX: Yes.

Ex. 2 at 88:22-90:5 (emphasis added). Additionally, Mr. Cox agrees that this twelve (12) step process could actually become a thirteen (13) step manual review process if the bankruptcy is more nuanced, including situations like an asset bankruptcy, adversary proceeding, or where there is a reaffirmation agreement. *Id.* at 90:5-25. Therefore, despite claiming that the process for determining whether a consumer's bankruptcy debt has been discharged is "straightforward," "mechanical," and "routine," Mr. Cox confirmed that his methodology actually requires, at a minimum, a dozen steps requiring detailed, manual review of each bankruptcy docket. Ex. 1 at 10; Ex. 2 at 80:19-90:25.

The Court cannot permit expert testimony where his characterization of his own methodology is inaccurate – there is nothing easy or simple about a legal-driven analysis requiring a dozen manual steps – and the Report attempts to minimize the details in his opinions. Simply put, Mr. Cox cannot conclude that determining a discharge is an easy proposition when his own methodology, which may or may not be limited to the 12 or even 13 steps outlined later in his deposition, makes it readily apparent that the analysis is much more complicated.

Moreover, there is no better test case than Plaintiff's own. Instead of applying his methodology to the facts of Plaintiff's case, Mr. Cox simply assumed that Plaintiff's SunTrust account was discharged. Under cross-examination, he was forced to concede that it really was not that simple – that ChexSystems would *not* have been able to determine based on the records available to it whether the SunTrust account was discharged. Ex. 2 at 106:13-17 (admitting ChexSystems would not be able to definitively say whether the debt was discharged based on the information in its records). In fact, in trying to evaluate whether Plaintiff's SunTrust account was discharged, Mr. Cox testified he would need to add an addition step (not referenced in the 13 above) where someone would need to look at whether the debtor filed a "notice of post-filing,

postpetition preconversion debts," which he acknowledged ChexSystems' never received, and evaluate that notice:

MR. GETTINGS: All right. So you said you would conduct additional review with additional data points, right?

MR. COX: Yes.

MR. GETTINGS: What would those data points be, and what would that review be?

MR. COX: Well, upon converting a case, a debtor will file a notice of post-filing, postpetition preconversion debts. And so I would find that schedule.

*Id.* at 106:18-107:2.

MR. GETTINGS: Have you seen any evidence that ChexSystems was provided with a copy of [P]laintiff's certification of unpaid debts before its January and March 2020 reports on [P]laintiff?

MR. COX: I am not aware of any evidence of them being put on such notice.

*Id.* at 107:18-23.

And Mr. Cox acknowledged that even after reviewing the notice of post-filing, postpetition preconversion debts, he would need to make further judgment calls because the debt to SunTrust in ChexSystems' records did not match the debt to SunTrust listed on the notice of post-filing, postpetition preconversion debts:

MR. GETTINGS: The SunTrust debt in the certification does not list an account number, correct?

MR. COX: Correct.

MR. GETTINGS: And the SunTrust debt that's listed is listed as a different amount than the debt SunTrust reported to ChexSystems on July 12th, 2019, correct?

MR. COX Yes.

| | |
|---|---|
| MR. GETTINGS | So the debt [P]laintiff listed on the schedules did not match the information on the debt SunTrust reported to ChexSystems, correct? |
| MR. COX | Correct. |

*Id.* at 108:5-19 (objection omitted).

This complexity aligns with Plaintiff's own experience. Plaintiff is not a lawyer and she herself testified that she found her discharge order "so complicated that [she] need[ed] an attorney to decipher it for [her.]" Ex. 3 at 103:12-19. Although Mr. Cox may style this analysis as easy, he is approaching it from the perspective, as he describes it, of a highly skilled bankruptcy lawyer who has been practicing for over 30 years. Ex. 1 at 4:15-20. Thus, Mr. Cox's "easy" theme, again, is nothing more than *ipse dixit*. The Court should not permit him to offer that opinion.

2. <u>Mr. Cox did not reliably apply his methodology to the facts of this case because he did not apply it at scale.</u>

Rule 702 not only requires a reliable methodology which, as described above, Mr. Cox lacks, but also a reliable application of that methodology. Absent a reliable application, expert opinion devolves into inadmissible *ipse dixit* – providing opinion simply based on the expert's say-so – one of the hallmarks of inadmissible testimony. *Plantan*, 2024 WL 3048648, at *15-16. Opinion 3 seems to insinuate that ChexSystems could easily implement the manual review Mr. Cox describes at scale. To the extent he intends to offer such an opinion, the Court should exclude it because Mr. Cox has not reliably applied any methodology at scale.

Mr. Cox's conclusion in Opinion 3 – that ChexSystems could easily use PACER to pull bankruptcy records – does not have the hallmarks of reliability because Mr. Cox undertook no efforts to apply his methodology to anyone, let alone the universe of ChexSystems' reports that he opines should be subject to his methodology. Ex. 1 at 12-13. According to Mr. Cox, "[a]ccess to PACER is inexpensive and, for many users, effectively free" and "occasional or light users frequently incur no PACER charges at all." *Id.* at 13. When questioned at his deposition, Mr. Cox

acknowledged that by "access to PACER" he meant ChexSystems has the ability to conduct a manual review of consumer bankruptcy dockets by using PACER, *not* that PACER can provide any form of automated scrub of account data to confirm whether an account has been discharged in bankruptcy. Ex. 2 at 111:20-112:4.

Further, Mr. Cox admitted he did *not perform any analysis* to determine (1) how much it would cost for ChexSystems to download and review PACER documentation pertaining to all unpaid accounts its furnishers provide, or (2) the time or resources for ChexSystems to review PACER dockets pertaining to all consumers with an unpaid account subject to a ChexSystems consumer report. *Id.* at 112:5-113:3. Indeed, Mr. Cox "is not opining on the amount of time and resources it would take to do this [PACER] analysis over thousands and thousands of consumers." *Id.* at 112:23-113:3. Although opining the PACER review is a purported feasible and inexpensive option for ChexSystems to employ, Mr. Cox was not even aware of the limitations and restrictions PACER places on bulk data reviews. *Id.* at 113:4-13 ("I am not aware of limitations that PACER may or may not impose… I did not consider that in my report.").

The core elements of Mr. Cox's Opinion 3 are that his proposed solution is cheap and simple. But Mr. Cox did not apply his methodology to test the accuracy of this opinion. Is this solution actually cheap and simple when applied to the millions of records ChexSystems processes yearly? Mr. Cox, through pure *ipse dixit*, just assumes it is. Even worse, Mr. Cox was unaware of the limitations of his methodology and had no idea how ChexSystems could conduct a review at the scale necessary for the amount of consumer reports it prepares in a single calendar year. Thus, even if the Court could conclude that Mr. Cox developed a reliable methodology, and there is no evidence to suggest that the Court can make such a conclusion, it is clear that Mr. Cox never

applied his methodology. Mr. Cox cannot show an application of his methodology, much less the reliable application required by Rule 702.

### C. Mr. Cox's conclusions in Opinion 4 are unreliable because they do not correlate to his background or experience.

The Court cannot rely on Mr. Cox's conclusions in Opinion 4 because he does not have any training as a medical practitioner or expertise with credit-related damages. Mr. Cox concluded in Opinion 4 that consumers experience "real and measurable harm," including purported "emotional distress," "ongoing fear," and other financial-related anxieties. Ex. 1 at 13-14. But he is not qualified to offer that opinion.

Federal Rule of Evidence 702(a) requires an expert's "scientific, technical, or other specialized knowledge [to] help the trier of fact to understand the evidence or to determine a fact in issue." An expert must have "satisfactory knowledge, skill, experience, training or education *on the issue for which the opinion is proffered*." *Brainchild Surgical Devices, LLC v. CPA Global Ltd.*, 144 F.4th 238, 254 (4th Cir. 2025) (citations omitted, emphasis added).

In addition to lacking any factual bases,[4] opinions about purported "emotional distress, reputational injury, and . . . ongoing fear" lack any correlation to Mr. Cox's qualifications. Mr. Cox readily admits that he is not an expert in medicine, mental health, psychiatry, psychology, or human behavior. Ex. 2 at 122:14-123:1. Similarly Mr. Cox admits that he is not an expert in damages caused by credit reporting. *Id.* at 123:2-4. His experience as a bankruptcy lawyer does not provide any qualifications to offer medical opinions or to opine on emotional harms related to credit reporting. Mr. Cox's opinions on purported damage caused by credit reporting should also be excluded as he cannot offer testimony on an issue with which he has no background or expertise.

[4] As described above, these conclusions rest on the inaccurate foundation of Mr. Cox's assumption that Plaintiff was denied a Chartway account.

Under the principles of *Daubert*, the Court should preclude Mr. Cox from testifying to Plaintiff's or any putative class members' damages because he lacks specialized knowledge, skill, experience, training, or education sufficient to render his proffered Opinion 4.

**D. Mr. Cox's opinions on the ultimate legal issue are impermissible because they are legal conclusions.**

Finally, Mr. Cox's first opinion – that ChexSystems' reporting of Plaintiff's account misrepresents the legal status of her SunTrust account – is a patent legal conclusion which attempts to overtake the jury's role as a factfinder.

The Fourth Circuit has long reasoned that expert testimony that seeks to provide legal conclusions on the ultimate issues in a case is impermissible. *See e.g., United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) ("[T]estimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible.") (citations omitted); *see also United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) (finding experts are prohibited from providing legal opinion) (citations omitted).

Opinion 1 is a clear attempt to opine on the legal accuracy of ChexSystems' reporting. Mr. Cox not only opines that ChexSystems' reporting is "inaccurate" but also that this alleged "inaccuracy" is not "merely technical; it misrepresents the legal status of the debt, implying ongoing liability where none exists." Ex. 1 at 5-6. These, unequivocally, are legal opinions about ChexSystems' credit reporting compliance – one of the ultimate questions in the case. Courts in the Eastern District of Virginia routinely exclude this type of end-run around the jury. *See, e.g., Georges v. Dominion Payroll Servs., LLC,* No. 3:16-cv-777, 2018 WL 2088751, at *6 (E.D. Va. May 4, 2018) (excluding expert opinion that constituted legal conclusion about the merits of the plaintiff's claim against the defendant). Mr. Cox's opinion on ChexSystems' accuracy in reporting should be precluded as improper legal opinion.

## V. CONCLUSION

For the reasons above, the Court should grant ChexSystems' motion, exclude the testimony of Plaintiff's purported expert, H. David Cox, and award any further relief necessary and proper.

Date: May 13, 2026

By: *<u>/s/ David M. Gettings</u>*

David M. Gettings (VSB # 80394)
Amanda K. Blackmon (VSB # 87326)
Kathleen M. Hutchenreuther (VSB # 90845)
TROUTMAN PEPPER LOCKE LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7500
Facsimile: (757) 687-7510
Email: dave.gettings@troutman.com
Email: amanda.blackmon@troutman.com
Email: kathleen.hutchenreuther@troutman.com

Courtney Hitchcock (VSB #95819)
TROUTMAN PEPPER LOCKE LLP
401 9th St NW #1000
Washington, DC 20004
Telephone: (202) 274-2950
Facsimile: (202) 274-2994
Email: courtney.hitchcock@troutman.com

Kearstin Harumi Sale (*admitted pro hac vice*)
TROUTMAN PEPPER LOCKE LLP
600 Peachtree Street NE, Suite 3000
Atlanta, Georgia 30308
Telephone: 404.885.3893
Facsimile: 404.885.3900
Email: kearstin.sale@troutman.com

*Counsel for Defendant ChexSystems, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on May 13, 2026, the forgoing document was electronically filed with the Clerk of the Court using the ECF system, which will send notice to all counsel of record.

*/s/ David M. Gettings*
David M. Gettings